SUROVEC, Appellant,

v.

LaCOUTURE et al., Appellees.

[Cite as *Surovec v. LaCouture* (1992), 82 Ohio App.3d 416.]

Court of Appeals of Ohio,
Montgomery County.

No. 12901.

Decided Oct. 8, 1992.

*Jim Rimedio,* for appellant.

*David Rickert,* for appellees.

CASTLE, Judge.

This is an appeal from a judgment rendered in the Montgomery County Common Pleas Court. Appellant, Paul S. Surovec, was represented in a case in the Domestic Relations Division of the Montgomery County Common Pleas Court by attorneys David M. Reichard and Paul E. LaCouture, both being members of the firm of Smith & Schnacke. After the judgment was rendered and decree in divorce filed on January 16, 1986, the appellant allegedly discovered that the decree did not contain certain provisions terminating alimony upon his ex-wife's cohabitation with an unrelated adult male, and alleged negligence on the part of his attorneys. Appellant then brought an action in malpractice against the above-named attorneys in the Court of Common Pleas of Clermont County. The case was subsequently transferred to the Montgomery County Common Pleas Court. After the case was transferred, LaCouture was dismissed as a party, and on May 17, 1989, the case proceeded to trial with the intervention of a jury. At the close of the evidence, a motion for mistrial was made and overruled, and thereafter the jury returned a verdict in favor of the appellees on November 16, 1990. After the final judgment entry was filed on December 27, 1990, appellant filed a motion for new trial which was also overruled. It is from these rulings and the judgment in the court below that the appellant has timely brought his appeal to this court.

## I

For his single assignment of error, appellant asserts that the "trial court erred to the prejudice of appellant by denying appellant's motion for mistrial and new trial."

In his presentation, appellant sets out what he believes to be five issues presented by this appeal: (1) whether a party, by answering questions as on cross-examination during a discovery deposition, waives the attorney-client privilege; (2) whether testimony given on cross-examination is "voluntary testimony" within the meaning of R.C. 2317.02(A); (3) whether the waiver of the attorney-client privilege which results from bringing a legal malpractice against a lawyer extends beyond that which is necessary for the lawyer to present a complete and truthful merit defense and to explain his actions fully; (4) whether a legal professional corporation has a professional relationship with a client of a lawyer employed by the corporation; and (5) whether a legal professional organization which is sued, together with one of its lawyer employees, is permitted to have access to and disclose the client's confidences, secrets and privileged communications which repose in a non-sued lawyer who is employed by the legal professional organization.

Appellant initially had a professional contact with the appellee's law firm when he was advised by one of the lawyers of that firm concerning business-related matters. On September 12, 1985, appellant's then-wife filed suit against him, seeking a divorce decree and alimony. Also named as a defendant in that action was one Ranka Dunaway, a female acquaintance of the appellant. Appellant retained David Reichard, an attorney employed by the firm, to represent him in the domestic relations case, along with Paul E. LaCouture, also an attorney with that firm. After the final judgment and decree of divorce was entered, appellant allegedly discovered that his wife may have been cohabiting with another male and asserted that the appellees were negligent in that they omitted a paragraph in the alimony provisions which would terminate alimony on a finding of cohabitation. Evidence adduced by appellees tended to show that the legal representation by Reichard and the law firm of Smith & Schnacke was not substandard, but also indicated that the appellant had lied about his relationship with Ranka Dunaway and about his transfers of assets to her. As a result of transferring these assets to her, and claiming them as business expense, it was asserted that the appellant had committed tax fraud. Appellees argue that not only did they represent the appellant in a professional fashion, meeting the standards for legal representation by an attorney to a client in the community, but that the proximate cause was not inadequate representation but rather appellant's desire to enter into a settlement agreement which was motivated by his fear

of exposing his relationship with Ranka Dunaway and his tax fraud intertwined therein. Testimony was presented that after the divorce was granted, appellant, who had known Dunaway for several years, permitted her to occupy his condominium in Florida and that thereafter appellant acquired additional sales territory which included Florida. It was also adduced that the appellant had given Dunaway substantial amounts of money, had retained her as his bookkeeper at a salary of $39,000 per year (a position which he had previously paid his former wife $11,200 per year to occupy), and thereafter appellant had his will changed by another attorney in the firm of Smith & Schnacke, leaving one-half of his estate to Dunaway. Appellant gave Dunaway a copy of the will which she kept in her safety deposit box. Testimony regarding the appellant's relationship with Dunaway and the content of the will were presented at trial by both the appellant on cross-examination and by Dunaway.

Appellant's counsel in the court below failed to object to this testimony at any time prior to the close of the evidentiary portion of the trial. A motion for mistrial was made after close of the evidence and before closing argument was given. The trial court overruled that motion and after judgment, the motion for a new trial was similarly overruled.

## II

■ We come now to appellant's assignment of error and the issues he asserts therein. The issues presented by appellant revolve around the claim that the contents of his will discussed with a Smith & Schnacke attorney, other than appellee Reichard, were covered by attorney-client privilege and were, therefore, inadmissible in his malpractice action against Reichard and the law firm. We believe that the rules of waiver apply in this case. Both appellant and appellee cite from the Code of Professional Responsibility and DR 4–101(B)(1), which provides in pertinent part:

"A lawyer shall not knowingly (1) Reveal a confidence or secret of his client. * * * (C) A lawyer may reveal * * * (2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order. * * * (4) Confidences or secrets necessary to establish or collect fee or to *defend himself or his employees or associates against an accusation of wrongful conduct.*" (Emphasis added.)

■ Appellant argues that any waiver as to the communication with attorney Reichard does not apply to the rest of the firm; knowledge possessed by such other members of the firm remains privileged. We think this argument fails. The appellant did have a professional relationship with the firm, as evidenced by the testimony relating to the divorce and also the

testimony relating to the making of a will. Likewise, he brought his action not only against the individual members of the firm, but also the firm as a corporate entity. In our opinion, not only appellee Reichard but the law firm, Smith & Schnacke, was entitled to gather their resources from the knowledge contained within the firm in order to defend themselves against the accusation of malpractice and negligent conduct. Having sued the firm and the individual attorneys, the privilege, if any, as between the client and the several attorneys was waived. The information relating to this relationship was admissible. The appellant of his own volition took the stand and testified, and among other things, he testified on direct examination as to the nature of his relationship with Dunaway. He also testified as to conversations with appellee Reichard relating to transfers of money made to Dunaway and this, in turn, laid the groundwork for further inquiry as to his relationship with Dunaway, including the handling of his will immediately after the divorce. R.C. 2317.02 provides that if a client "voluntarily testifies" his attorney may testify on the same subject. Courts in Ohio have consistently held that the intent of this statute permitted the attorney to testify on the same "subject" in an unlimited or unrestricted sense, meaning the subject of the controversy and not merely the subject of the communication. *Inzano v. Johnson* (1986), 33 Ohio App.3d 62, 514 N.E.2d 741; *Walsh v. Barcelona Assoc., Inc.* (1984), 16 Ohio App.3d 470, 16 OBR 553, 476 N.E.2d 1090. Specifically, when a client testifies, he waives the privilege to any subject pertinent to his claim testified to by him regardless of whether his voluntary testimony ever referred to the conversations with his attorney. *Spitzer v. Stillings* (1924), 109 Ohio St. 297, 142 N.E. 365. Testimony was also adduced tending to show that after the will was made, the appellant gave the will to Dunaway for safekeeping. Basic to the attorney-client privilege is the intention on the part of the client that his communication with counsel remain privileged. The Supreme Court of Ohio in *State v. Post* (1987), 32 Ohio St.3d 380, 513 N.E.2d 754, stated in the syllabus: "A client's disclosure to a third party of communications made pursuant to the attorney-client privilege breaches the confidentiality underlying privilege and constitutes a waiver thereof."

During the course of trial, when testimony was elicited concerning the appellant's will, both at the time of his deposition and at trial, no objection was made to the introduction of such evidence. Only after the evidence had been presented in toto, and the case was ready for argument did the appellant, through his attorney, object to that evidence. Evid.R. 103 provides:

"(A) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"(1) Objection in case the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground or objection if the specific ground was not apparent from the context[.] * * * "

■ The only exception to this rule is that an appellate court may take notice of "plain error." We find no plain error in this record. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001.

The record in this case indicates a trial of several days in duration with a large volume of testimony presented by the parties for the jury's consideration. The single question concerning appellant's will we do not believe was of sufficient import to adversely affect the character of the proceedings.

■ An appellate court must affirm the result reached in the trial court when error, if any, is harmless. Civ.R. 61 states:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Central to the question of whether "substantial justice" was done is the inquiry as to whether if such error were corrected, the jury would have reached a different result. *Ferrebee v. Boggs* (1970), 24 Ohio App.2d 18, 53 O.O.2d 95, 263 N.E.2d 574.

From the record in this case, we cannot conclude that the jury would have reached a different result if the testimony adduced from the appellant had been stricken. Not only did the jury return a general verdict for the appellees, but additionally responded to an interrogatory finding in favor of the appellees finding that appellee Reichard had not been negligent in his representation of appellant.

From this we can conclude that the jury never reached the question of causation as to which the will-related testimony was applicable.

### III

For the reasons we have given in our discussion above, we find that the appellant waived any privilege which might have existed as it relates to the attorney-client relationship with the appellees. Moreover, we find that the failure to timely object to any testimony which otherwise might have been privileged constitutes a waiver. The decision of the trial court in overruling

**422**

the motion for mistrial and the motion for new trial was correct and we affirm the same.

*Judgment affirmed.*

WOLFF, P.J., and BROGAN, J., concur.

LYLE W. CASTLE, J., retired, of the Twelfth Appellate District, sitting by assignment.