JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-Appellants, Ali and Pardis Lotfi-Fard ("Appellants") appeal from various decisions of the trial court. For the reasons set forth below, we affirm.
 {¶ 2} On October 29, 2003, Appellants filed a complaint against Defendant-Appellee, First Federal of Lakewood ("Appellee") asserting claims of breach of contract, unjust enrichment and fraud and bad faith dealing. The alleged claims arose out of a loan agreement between Appellants and Appellee.
 {¶ 3} After discovery, Appellee filed a motion for summary judgment on September 1, 2004. Soon thereafter, on September 29, 2004, Appellants filed a motion for class certification, which Appellee opposed.
 {¶ 4} On October 19, 2004, the trial court conducted a final pretrial hearing, at which time the court denied Appellee's motion for summary judgment as well as Appellants' motion for class certification. The court further referred the matter to arbitration which was held on April 19, 2005. Appellants appealed the arbitration award and the case was returned to the trial court.
 {¶ 5} The trial court scheduled the case for trial for September 26, 2005. Prior to trial, Appellee filed a number of motions in limine: one motion sought to disqualify Appellants' expert witness; one sought to preclude Appellants from offering any testimony and/or evidence regarding the lawsuit between Dr. Hariri and Appellants to establish damages; one sought to preclude the testimony of James Elwell, Esq.; and one sought to disqualify Appellants' accountant from testifying as to Appellants' interest payments on the undisbursed loan.
 {¶ 6} On September 26, 2005, the morning of trial, the trial judge referred the case to the administrative judge for a trial by a visiting judge. That afternoon, the visiting judge impaneled a jury, granted Appellee's motion in limine to preclude Appellants from offering any testimony or evidence regarding the lawsuit between Dr. Hariri and Appellants, and reserved ruling on the remaining motions in limine pending voir dire of the witnesses.
 {¶ 7} After hearing the testimony of Ali Lofti-Fard, the visiting judge conducted a voir dire of Appellants' expert, Rogelio Navarro ("Navarro"), in order to ascertain his qualifications and ultimately rule upon Appellee's motion in limine to exclude his testimony. Based upon the extensive testimony provided by Navarro, the visiting judge found Navarro lacked sufficient qualifications to testify as to banking industry standards in the United States. Therefore, the visiting judge disqualified Navarro as an expert witness and granted Appellee's motion in limine.
 {¶ 8} As previously stated, Appellants offered the testimony of Ali Lotfi-Fard. Appellants also proffered the testimony of the following witnesses: James Elwell, Esq., Roy Schultz, Ali Mohammadpour, Jacqueline McLucas, David Shaw, Michael Berichon, and Paris Lotfi-Fard. A brief synopsis of the testimony follows with a detailed account of the testimony being discussed within the assigned errors.
 {¶ 9} On or about June 7, 1999, Appellants signed and executed a commercial loan application with Appellee ("Loan Application"). In the Loan Application, Appellants sought financing in the amount of $207,900 in order to pay the remaining balance of a land contract, as well as to renovate a building located on Detroit Avenue in Cleveland, Ohio that contained several commercial storefronts and apartment suites.
 {¶ 10} In the Loan Application, Appellants agreed to the following:
 {¶ 11} "1) Withholding of $30,000 of Loan Proceeds until FFL receives verification of repairs to property; 2) Withholding of $1,200 of Loan Proceeds until FFL receives verification of boiler repairs being completed 3) $75.00 Fee per Inspection; 4) Mortgage placed on subject property at 9406-9424 Detroit Ave., Cleveland, OH; 5) Cross-collateralize principal's residence located at 2243 Georgia Ave., Westlake, OH; 6) Signatures(Guarantees)of Ali-Lofti-Fard Pardis Lofti-Fard; 7) Hold $15,000 for repairs of 9 suites ($1,700 per suite)."
 {¶ 12} Appellee approved the Loan Application on July 2, 1999. Consequently, on July 20, 1999, Appellants executed an Adjustable Rate Mortgage Note ("Mortgage Note") and Open-End Mortgage ("Mortgage") in favor of Appellee.
 {¶ 13} Roy Schutz testified that, per the terms of the Loan Application, he was to inspect the Detroit Avenue property and report to Appellee the status of the repairs. Roy Schultz explained that if the repairs were complete, Appellee then would release the withheld funds accordingly. If the repairs were not complete, Appellee would retain the funds until verification of the repairs. Michael Berichon testified that the withheld loan proceeds were placed in a separate loan-in-process escrow account.
 {¶ 14} Schultz testified that he was able to view a number of areas of the property and that he verified that some repairs were completed in these areas. Consequently, Appellee released $13,450.00 to Appellants in July, 2000. Appellee attempted to release another $8,875.00 in June of 2003, but Appellants denied the funds. Schultz further testified that he was unable to verify the completion of repairs to other areas of the property until July of 2004. Therefore, it was not until that time that Appellee released the balance of the withheld loan proceeds to Appellants.
 {¶ 15} After the summation of Appellants' case, Appellee moved for directed verdict on all claims asserted in Appellants' complaint. The trial court granted Appellee's motions as to all claims.
 {¶ 16} Appellants now appeal and assert eight assignments of error for our review. Appellee asserts one cross-assignment of error for review. We will address Appellants' assignments of error first.
 {¶ 17} Appellants' first assignment of error states:
 {¶ 18} "The trial court erred as a matter of law and abused its discretion in summarily denying Plaintiffs-Appellants' Motion for Class Certification without articulating its rationale as set forth in Civ.R. 23(B)."
 {¶ 19} In this assignment of error, Appellants maintain that the trial court erred in denying their motion for class certification. For the following reasons, we find that Appellants have waived their rights to appeal on this issue.
 {¶ 20} Final orders are defined in R.C. 2505.02 which provides in relevant part as follows:
 {¶ 21} "(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 {¶ 22} "* * *
 {¶ 23} "(5) An order that determines that an action may or may not be maintained as a class action;"
 {¶ 24} Accordingly, pursuant to R.C. 2505.02(B)(5), an order of a trial court denying a party class action certification is a final, appealable order. Furthermore, App.R. 4(A) mandates that a party file its appeal within thirty days of a final appealable order. Thus, an order of a trial court determining that an action shall not be maintained as a class action, is a final appealable order, and a party must appeal such an order within 30 days of the date of entry pursuant to App.R. 4(A).
 {¶ 25} In the instant action, the court denied Appellants' motion for class certification in a judgment entry dated October 19, 2004. Pursuant to R.C. 2505.02(B)(5), such an order is final and appealable. Accordingly, Appellants had 30 days to file a notice of appeal with this court. Appellants, however, did not file their notice of appeal of this issue until October 26, 2005, more than one year after the final, appealable order. As Appellants have failed to timely appeal the trial court's denial of class certification, they have waived their right to challenge this issue on appeal. Appellants' first assignment of error is without merit.
 {¶ 26} Appellants' second assignment of error states:
 {¶ 27} "The presiding visiting trial Judge abused its discretion and erred to the prejudice of Plaintiffs-Appellants by granting Defendant's motion in limine and disqualified Plaintiffs' expert witness."
 {¶ 28} As an initial matter, we note that Appellee maintains that Appellants waived their right to appeal the issue of Navarro's disqualification because Appellants failed to proffer the substance of Navarro's testimony. A review of the record, however, reveals that Appellants proffered, during voir dire of Navarro, which occurred during the trial but out of the presence of the jury, that Navarro would testify as to banking industry standards, more specifically, "whether or not somebody can withhold loan and charge interest." Accordingly, Appellants did not waive their appeal of the trial court's disqualification of Navarro to testify as an expert witness.
 {¶ 29} In this assignment of error, Appellants assert that the trial court erred in finding that Rogerio Navarro ("Navarro") was not qualified as an expert to testify concerning banking industry standards.
 {¶ 30} Admissibility of expert testimony is determined on a case by case basis, State v. Clark (1995), 101 Ohio App.3d 389,410, 655 N.E.2d 795, and the trial court is vested with discretion to make this determination, in accordance with the terms of Evid.R. 702. Id.; State v. Nemeth (1998),82 Ohio St.3d 202, 207, 1998-Ohio-376, 694 N.E.2d 1332; Alexander v. Mt.Carmel Med. Ctr. (1978), 56 Ohio St.2d 155, 159, 383 N.E.2d 564. Thus, an appellate court must not reverse a trial court's determination as to the qualification of an expert witness absent a clear abuse of discretion. Ohio Turnpike Comm. v. Ellis
(1955), 164 Ohio St. 377, 131 N.E.2d 397, paragraph eight of the syllabus. An abuse of discretion connotes more than mere error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 31} Pursuant to Evid.R. 104(A), the trial court must make a threshold determination regarding the qualification of a person to be an expert witness before it permits expert testimony. SeeScott v. Yates (1994), 71 Ohio St.3d 219, 221, 643 N.E.2d 105. Pursuant to Evid.R. 702, a witness may testify as an expert if he or she is qualified as an expert by virtue of specialized knowledge, skill, experience, training or education regarding the subject matter of the testimony. Evid.R. 702(B); Nichols v.Hanzel (1996), 110 Ohio App.3d 591, 597, 674 N.E.2d 1237. The Supreme Court of Ohio in State Auto Mut. Ins. Co. v. ChryslerCorp. (1973), 36 Ohio St. 2d 151, 160, 304 N.E.2d 891, expounded the test for qualification of an expert witness by quoting 21 Ohio Jurisprudence 2d 429, Evidence, Section 421:
 {¶ 32} "* * * His qualification [as an expert witness] depends upon his possession of special knowledge which he can impart to the jury, and which will assist them in regard to a pertinent matter, which he must have acquired either by study of recognized authorities on the subject or by practical experience, and it must appear that he has an option of his own, or is able to form one, upon the matter in question."
 {¶ 33} Reviewing Navarro's testimony within reference to Evid.R. 702 we note, as a preliminary matter, that Navarro admitted to never having testified as an expert in court, nor had he ever been qualified as an expert by a court of law. As to his specialized knowledge, skill, experience, training or education regarding the subject matter, the record reveals that Navarro was employed in 1970 through 1983 in the banking industry, but that nearly all his professional experience during that time occurred in foreign countries. Accordingly, Navarro's experience required him to be knowledgeable in banking regulations of those countries. In fact, Navarro testified that he had never worked as a bank regulator, bank auditor, or loan officer in the United States.
 {¶ 34} Thus, we believe that while Navarro may be qualified to testify as to banking industry standards in foreign countries, he is not properly qualified to testify as an expert in the instant matter because this case involves a commercial loan entered into between U.S. citizens and a federally chartered U.S. savings and loan association. Accordingly, we find that the trial court correctly determined that Navarro lacked sufficient qualifications to opine regarding banking industry standards in the U.S. Appellants' second assignment of error is without merit.
 {¶ 35} In the interests of convenience, we will now address Appellants' fourth, fifth and sixth assignments of error before proceeding to Appellants' third assignment of error.
 {¶ 36} In Appellants' fourth, fifth and sixth assignments of error, Appellants assert that the trial court erred in granting Appellee's motion for directed verdict as to all three of Appellants' causes of action.
 {¶ 37} As a procedural matter, we review de novo a court's ruling on a motion for directed verdict. Hardy v. Gen. MotorsCorp. (1998), 126 Ohio App.3d 455, 462, 710 N.E.2d 764, citingHowell v. Dayton Power Light Co. (1995), 102 Ohio App.3d 6,13, 656 N.E.2d 957. As Civ.R. 50(A)(4) provides:
 {¶ 38} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 39} A motion for a directed verdict tests the legal sufficiency of the evidence presented by a plaintiff. Balog v.Matteo Aluminum, Inc., Cuyahoga App. No. 82090, 2003-Ohio-4937. In ruling upon a motion for directed verdict, an appellate court must not consider the weight of the evidence, nor the credibility of witnesses. Cater v. Cleveland, 83 Ohio St.3d 24, 33, 1998-Ohio-421, 697 N.E.2d 610, citing Strother v. Hutchinson
(1981), 67 Ohio St.2d 282, 423 N.E.2d 467. Further, the trial court must construe the evidence in a light most favorable to the non-moving party. Rinehart v. Toledo Blade Co. (1985),21 Ohio App.3d 274, 487 N.E.2d 920. Hence, the court must deny a motion for directed verdict if substantial competent evidence exists from which reasonable minds might reach different conclusions.Ramage v. Cent. Ohio Emergency Serv., Inc., 64 Ohio St.3d 97,109, 1992-Ohio-109, 592 N.E.2d 828.
 {¶ 40} Keeping the aforementioned standard of review in mind, we now review Appellants' fourth, fifth and sixth assignments of error.
 {¶ 41} Appellants' fourth assignment of error states:
 {¶ 42} "The presiding visiting trial Judge erred to the prejudice of Plaintiffs-Appellants by granting Defendant's Motion for Directed Verdict in dismissing Plaintiffs' Contract Claim."
 {¶ 43} For the following reasons, we find that the trial court properly granted Appellee's motion for directed verdict as to Appellants' breach of contract claim.
 {¶ 44} The elements of a cause of action for breach of contract are: "`the existence of a contract; performance by the plaintiff; breach by the defendant; and damage or loss to the plaintiff.'" Powell v. Grant Med. Ctr., 148 Ohio App.3d 1, 10, 2002-Ohio-443, 771 N.E.2d 874, quoting Nilavar v. Osborn
(2000), 137 Ohio App.3d 469, 483, 738 N.E.2d 1271.
 {¶ 45} In the instant matter, the record reveals that Appellants did not present sufficient evidence to establish a claim for breach of contract in that Appellants failed to establish that Appellee breached the loan agreement.
 {¶ 46} The record demonstrates that the parties agreed that Appellee would withhold $46,200 from the loan proceeds until Appellee verified that Appellants made various repairs to the property. Appellants assert that this condition was not part of the loan agreement and that they did not know what they needed to do to receive the withheld loan proceeds. A review of the transcript, however, reveals that such an assertion is in direct contradiction to the admissions in their testimony at trial.
 {¶ 47} Ali Lofti-Fard admitted under oath that he understood that a portion of the loan proceeds would be withheld. First, he testified that he signed the Loan Application that stated that loan proceeds would be withheld. In fact, he admitted that the conditions prescribed in the Loan Application were proffered by him. He also testified that he understood that $1200 would be withheld until boiler repairs were made and that $15,000 would be withheld until the nine apartment suites were repaired. Furthermore, he admitted under oath that he signed the settlement statement and knew that part of the agreement was that $46,200 was being withheld for repairs of the property.
 {¶ 48} Pardis Lofti-Fard also testified that prior to signing the loan agreement, Michael Berichon "told us they going to withhold some money until we finish."
 {¶ 49} In light of Appellants' own admissions, it is clear that Appellants understood and agreed to several conditions of the loan agreement requiring Appellee to withhold funds until repairs to the property were completed. Thus, we find Appellants' argument that Appellee acted in bad faith in withholding the loan proceeds until Appellants completed the repairs without merit. Appellee cannot act in bad faith when it is merely performing under the terms of the contract. Accordingly, as Appellants failed to establish that Appellee breached the contract, an essential element of a breach of contract claim, the trial court was correct in granting Appellee's motion for directed verdict. Appellants' fourth assignment of error is without merit.
 {¶ 50} Appellants' fifth assignment of error states:
 {¶ 51} "The presiding visiting trial Judge erred to the prejudice of Plaintiffs-Appellants by granting Defendant's Motion for Directed Verdict in dismissing Plaintiffs' Unjust Enrichment Claim."
 {¶ 52} One is unjustly enriched if the retention of a benefit would be unjust or one profits or enriches himself inequitably at another's expense. McClanahan v. McClanahan (1946),79 Ohio App. 231, 233, 72 N.E.2d 798. To maintain a cause of action for unjust enrichment, "[i]t is not sufficient for the plaintiff to show that it has conferred a benefit upon the defendants. It must go further and show that under the circumstances it has a superior equity so that, as against it, it would be unconscionable for the defendant to retain the benefit."Cincinnati v. Fox (1943), 71 Ohio App. 233, 239, 49 N.E.2d 69.
 {¶ 53} Appellants in the present action failed to show that Appellee was unjustly enriched at their expense. Appellants contend that Appellee was unjustly enriched three times: first by withholding or re-lending the undisbursed loan proceeds; second, by receiving interest on the undisbursed loan proceeds; and third, by re-lending or reinvesting the interests it received from Appellants' undisbursed funds. We find each of their assertions without merit.
 {¶ 54} First, in regards to Appellants' assertions that Appellee reinvested or re-lended either the withheld loan proceeds or the interest on the withheld loan proceeds, a review of the record reveals that Appellants did not offer any evidence establishing that this money was either reinvested or re-lended. In fact, Michael Berichon testified that the withheld funds were placed in a loan-in-process escrow account. Accordingly, without any evidence establishing Appellants' assertions, their claim of unjust enrichment on this ground is without merit.
 {¶ 55} We also disagree with Appellants' assertion that Appellee was unjustly enriched by receiving interest on the withheld loan proceeds. Appellants maintain that they were not aware that Appellee would be receiving interest on the withheld loan proceeds. A review of that Mortgage Note, however, establishes that the Note is a "Fully Amortizing Loan" and that principal and interest will be paid for life of the entire amount of the loan. Appellants do not dispute that they signed the Mortgage Note. Therefore, their argument lacks merit because Appellee failed to produce any evidence establishing Appellee received an unjust benefit because the benefit they received is that which the parties agreed to. Consequently, dismissal was appropriate as it pertained to Appellants' claim for unjust enrichment. Therefore, their fifth assignment of error is without merit.
 {¶ 56} Appellants' sixth assignment of error states:
 {¶ 57} "The presiding visiting trial Judge erred to the prejudice of Plaintiffs-Appellants by granting Defendant's Motion for Directed Verdict in dismissing Plaintiffs' Bad Faith Dealing and Fraud Claim."
 {¶ 58} In order to recover on a claim of fraud, the plaintiff must present evidence which demonstrates that following:
 {¶ 59} "(a) A representation or, where there is a duty to disclose, concealment of fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another to rely upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."
 {¶ 60} Williams v. Aetna Fin. Co. (1998),83 Ohio St.3d 464, 475, 1998-Ohio-294, 700 N.E.2d 859, citing Cohen v. Lamko,Inc. (1984), 10 Ohio St.3d 167, 169, 462 N.E.2d 407. All these elements must be supported by evidence or the cause of action cannot be maintained. See Burr v. Stark Cty. Bd. of Commrs.
(1986), 23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus.
 {¶ 61} In the case sub judice, Appellants assert that they were not aware that Appellee would withhold loan proceeds until repairs on the property were completed. They further aver Appellee never disclosed to them that they were going to be charged interest on the withheld loan proceeds. A review of the record, however, reveals that Appellants have failed to set forth specific facts showing a genuine issue of fact regarding fraud on the part of Appellee.
 {¶ 62} As stated previously, Appellants acknowledged that they signed the Loan Application, and in fact, proposed the conditions listed on the Application. Pardis Lofti-Fard also admitted under oath that prior to signing the loan agreement, Michael Berichon "told us they going to withhold some money until we finish." Accordingly, Appellants are unable to establish that Appellee concealed the fact that it would withhold loan proceeds until repairs to the property are completed.
 {¶ 63} Additionally, the record reveals that Appellants admitted to signing the Mortgage Note, which clearly states that it is a "Fully Amortizing Loan" and that principal and interest must be paid for the life of the entire amount of the loan. Again, in light of this evidence, we find that Appellants failed to produce sufficient evidence establishing any alleged concealment on the part of Appellees as to the issue of charging interest on the withheld loan proceeds. Accordingly, Appellants' sixth assignment of error is without merit.
 {¶ 64} We now return to Appellants' third assignment of error, which states:
 {¶ 65} "The presiding visiting trial Judge abused its discretion and erred to the prejudice of Plaintiffs-Appellants by granting Defendant's motion in limine to exclude all the evidence relating to a lawsuit filed by Dr. Hariri against Plaintiffs' and their lost profits."
 {¶ 66} First, we note that Appellee maintains that Appellants waived their right to pursue this issue on appeal because Appellants, having been restricted from introducing evidence as a result of a motion in limine, must seek to introduce the evidence by proffer or some other manner at trial. We decline to accept Appellee's contention. Appellants did not waive their right to assert this issue on appeal because, during the trial of this matter, they attempted to introduce evidence of the prior lawsuit, but were denied admissibility by the trial judge.
 {¶ 67} We now proceed to consider whether the trial court abused its discretion in disallowing the admission of evidence concerning the prior lawsuit between Appellants and Dr. Hariri to show the economic losses resulting from Appellee's alleged breach of contract.
 {¶ 68} As a procedural matter, we note that a trial court has broad discretion in determining whether to admit or exclude evidence. State v. Lyles (1989), 42 Ohio St.3d 98, 99,537 N.E.2d 221. Thus, absent an abuse of discretion that materially prejudices a party, an appellate court will not reverse an evidentiary determination of a trial court. Id.; see, also,Weiner, Orkin, Abbate Suit Co. L.P.A. v. Nutter (1992),84 Ohio App.3d 582, 589, 617 N.E.2d 756. An abuse of discretion connotes more than an error in law or judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621, 1993 Ohio 122, 614 N.E.2d 748. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 69} We find that the trial court did not abuse its discretion in refusing to admit evidence of the Hariri case as the trial court's refusal did not materially prejudice Appellants. In Fada v. Information Sys. Networks Corp.
(1994), 98 Ohio App.3d 785, 792, 649 N.E.2d 904, the court stated:
 {¶ 70} "The existence of error does not require a disturbance of the judgment unless the error is materially prejudicial to the complaining party. McQueen v. Goldey (1984), 20 Ohio App.3d 41, 20 Ohio B. Rep. 44, 484 N.E.2d 712. Pursuant to Civ.R. 61, the error must affect the substantial rights of the complaining party or substantial justice must not have been done. It is well established that errors `will not be deemed prejudicial where their avoidance would not have changed the result of the proceedings.' Walters v. Homberg (1914), 3 Ohio App. 326, syllabus; Surovec v. LaCouture (1992), 82 Ohio App.3d 416,612 N.E.2d 501."
 {¶ 71} In the instant matter, any refusal to admit evidence of the Hariri case to prove damages did not change the outcome of the directed verdicts. As decided above, the trial court correctly granted a directed verdict as to each of Appellants' causes of action not based on the fact that they failed to prove damages, but for the lack of sufficient evidence establishing other essential elements in each cause of action. Accordingly, even if we were to agree with Appellants' assertions that the trial court erred in not allowing the introduction of evidence regarding the Hariri lawsuit to prove damages, such an alleged error was harmless and did not affect the outcome of the trial court's decision to dismiss Appellants' causes of action. Accordingly, Appellants' third assignment of error is without merit.
 {¶ 72} Because Appellants' seventh and eighth assignments of errors are interrelated, we will address both simultaneously.
 {¶ 73} Appellants' seventh assignment of error states:
 {¶ 74} "The presiding visiting trial Judge committed a reversible error when it failed to disclose his past position in the City of Lakewood and connections to the Defendant bank."
 {¶ 75} Appellants' eighth assignment of error states:
 {¶ 76} "The presiding visiting trial Judge erred by not recusing himself from the case when his actions and statement showed a clear bias and prejudice against Plaintiffs, thus violating their right to a fair trial."
 {¶ 77} Within these assignments of error, Appellants argue that the trial judge should have recused himself from the case because of his alleged close ties to Appellee. Appellants further assert that the trial judge erred in not recusing himself from the case when his actions and statement showed a clear bias and prejudice. We, however, are without authority to address Appellants' assertions.
 {¶ 78} Pursuant to Section 5(C) of Article IV of the Ohio Constitution, the power to pass upon disqualification of any judge of the court of common pleas is vested solely with the Chief Justice of the Supreme Court of Ohio or his designee. Beerv. Griffith (1978), 54 Ohio St.2d 440, 441-442, 377 N.E.2d 775. Therefore, a court of appeals lacks the authority to pass upon the disqualification of a judge or void a judgment of the trial court on that basis. Id.; see, also, Furlan v. Saloka, Cuyahoga App. No. 83186, 2004-Ohio-1250. Accordingly, the proper procedure for a party who believes that a judge is biased and should not preside over a case is to file an affidavit of disqualification with the Supreme Court of Ohio. Furlan, supra. As we are without authority to void a judgment of the trial court based upon the trial judge's alleged bias or prejudice, Appellants' seventh and eighth assignments of error are overruled.
 {¶ 79} Appellee's cross-assignment of error states:
 {¶ 80} "The trial judge erred by not granting Defendant-Appellee's Motion for Summary Judgment."
 {¶ 81} Appellee filed a brief as Defendant-Appellee. In that brief, Appellee raises an assignment of error concerning the trial court's denial of its motion for summary judgment. We decline to address Appellee's assignment of error pursuant to the Supreme Court of Ohio's decision in Pang v. Minch (199),53 Ohio St.3d 186, 559 N.E.2d 1313. In that case, the court held:
 {¶ 82} "Thus, where the court of appeals determines that the trial court committed no error prejudicial to the appellant in any of the particulars assigned and argued in the brief thereof, App.R. 12(B) requires the appellate court to refrain from consideration of errors assigned and argued in the brief of appellee on cross-appeal which, given the disposition of the case by the appellate court, are not prejudicial to the appellee. The judgment or final order of the trial court should, under such circumstances, be affirmed as a matter of law by the court of appeals."
 {¶ 83} As the trial court in the instant matter did not prejudice Appellants in any of the assertions assigned in their brief, we decline to address Appellee's cross-appeal. Accordingly, we affirm the judgment of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
James J. Sweeney, J., and Anthony O. Calabrese, Jr., J.,concur.