OPINION
{¶ 1} Alex A. West, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas in which the court found him guilty, pursuant to a jury verdict, of gross sexual imposition, in violation of R.C. 2907.05, which is a felony of the third degree.
 {¶ 2} D.R. was a five-year-old girl at the time of the incident in question. D.R.'s parents (referred to individually as "mother" and "father") had a shared parenting agreement, under which each parent had custody of D.R. on alternating weeks. On January 1, 2003, D.R. told her father that her leg hurt, and he noticed that D.R.'s legs had been shaven. On January 16, 2003, D.R. told her father and his wife, C.R., that, while at the home of mother, appellant touched her "pee-pee" and that her "pee-pee hurt," indicating she meant her vagina. Father called Franklin County Children Services ("FCCS") the following day, and, on January 18, 2003, FCCS interviewed D.R.
 {¶ 3} On January 19, 2003, father met mother and appellant to exchange custody. Father told mother about D.R.'s allegation, and, when mother became upset, appellant exited his vehicle and joined the discussion. Appellant yelled at D.R., who was standing with the parties, regarding the allegation, and appellant and mother left in their vehicle with D.R. On January 20, 2003, D.R. was examined by a doctor for signs of sexual abuse. On January 22, 2003, an FCCS caseworker, Karen Setterlin, went to mother's home and interviewed D.R., her mother, and appellant. At this time, D.R. denied that she had been touched.
 {¶ 4} On January 23, 2003, appellant went to the police station to speak with authorities about the situation. Testimony and evidence presented at trial indicated that, although appellant initially stated he had not touched D.R., he later executed a written statement indicating that, while D.R. was sleeping in his and mother's bed, he touched D.R. underneath her underwear and inserted his finger into D.R.'s vagina. He stated he thought he was touching D.R.'s mother and told D.R. not to tell her mother. On January 31, 2003, father took D.R. to a hospital where a pediatric nurse practitioner, Gail Hornor, examined D.R., and a social worker, Debbie Fournier, interviewed the child.
 {¶ 5} Also on January 31, 2003, appellant was indicted on one count of rape, a violation of R.C. 2907.02 and a first-degree felony, and one count of gross sexual imposition, a violation of R.C. 2907.05 and a third-degree felony. Appellant filed several subpoenas seeking records from FCCS and the testimony of D.R.'s caseworkers, including Setterlin. Further, the State of Ohio, plaintiff-appellee, filed several motions to quash, including a motion to quash the subpoena filed August 3, 2004, and an accompanying motion in limine related to the subpoenas seeking records and the testimony of FCCS caseworkers. FCCS's records were provided to the court for in camera inspection prior to trial. On September 9, 2005, the trial court held a pre-trial hearing regarding the disclosure of FCCS's records. After rejecting appellant's request for all of the documents, the trial court indicated it would be available to conduct the in camera inspection and rule on the motion in limine after appellant's counsel reviewed the records to determine which were relevant. Sometime after the hearing, defense counsel obtained the records from another source, no further proceedings on the matter were held, and the trial court did not address the motion in limine relating to Setterlin's testimony.
 {¶ 6} On November 7, 2005, a jury trial commenced. Although D.R., who was then eight years old, did not remember several tangential details surrounding the events in 2003, she testified at trial that appellant had come into her room one night, took her to the bathroom, either took off her underwear or told her to do so, shaved her legs, and put his fingers in her "pee-pee." Also during the trial, appellant sought to call FCCS caseworker Setterlin to testify, and the state renewed its prior motion in limine. The trial court granted the motion and prohibited the testimony of Setterlin and the introduction of any records related to her investigation of the abuse claim.
 {¶ 7} On November 22, 2005, the jury returned a verdict of not guilty on the rape charge and guilty on the gross sexual imposition charge. A sentencing hearing was held on January 3, 2006, and the trial court sentenced appellant to a one-year term of imprisonment and found him to be a sexually oriented offender. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
 [I.] The trial court committed reversible error and deprived Defendant-Appellant of due process of law by sustaining the State's Motion to Quash the subpoena requiring the testimony of Karen Setterlin of Franklin County Children's Services and seeking the corresponding investigatory records.
 [II.] The trial court erred when it entered judgment against Defendant-Appellant for Gross Sexual Imposition in violation of R.C. 2907.05
when the evidence was insufficient to sustain a conviction and the conviction was not supported by the manifest weight of the evidence.
 {¶ 8} Appellant argues in his first assignment of error that the trial court erred when it sustained the state's motion to quash the subpoena requiring the testimony of FCCS caseworker Setterlin and seeking her investigatory records. We review a trial court's order overruling or granting a discovery motion to quash under an abuse of discretion standard. See, e.g., State ex rel. The V. Cos. v. Marshall (1998),81 Ohio St.3d 467, 469. An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable or arbitrary. Rock v.Cabral (1993), 67 Ohio St.3d 108. When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. In re Jane Doe I (1991), 57 Ohio St.3d 135, citing Berk v. Matthews (1990), 53 Ohio St.3d 161.
 {¶ 9} After reviewing the evidence and the trial testimony, we find that we need not review the merits of appellant's argument, as any error in quashing the subpoena regarding the FCCS caseworker and her investigatory records was harmless error. Harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). An appellate court will not reverse a judgment for improper exclusion of evidence on a basis of error that is harmless. See Civ.R. 61. Courts have not hesitated to find that error is harmless where the excluded evidence is merely cumulative to other compelling evidence. See, e.g., State v.Fenton (1990), 68 Ohio App.3d 412, 428. Further, an error is harmless if the jury would not have rendered a different verdict had the excluded evidence been admitted at trial. Surovec v. LaCouture (1992),82 Ohio App.3d 416, 421, citing Ferrebee v. Boggs (1970), 24 Ohio App.2d 18.
 {¶ 10} In the present case, appellant sought to introduce the testimony of Setterlin and a January 22, 2003 report created by her during an interview with D.R. In that statement, as related by appellant's counsel in the proffer at trial, D.R. told Setterlin that she told people that appellant did things that he actually did not do. D.R. stated she told others that appellant touched her "pee-pee," but it never happened. D.R. stated to Setterlin that no one has ever touched her "boobies," "pee-pee" or "butt," and she would tell her mother if anyone had done so. However, a review of the trial record reveals that there was other evidence and testimony admitted indicating that D.R. had recanted her allegations to Setterlin, and the same evidence referred to in the proffer was presented to the jury via these other means. Specifically, Worthington Police Department Sergeant Jennifer Wuertz testified that she was present at the January 22, 2003 interview in question. Wuertz stated that, at that interview, D.R. denied that anyone, including appellant, had ever touched her "boobies, "pee-pee" or "butt." D.R. also denied that appellant had shaved her legs and said she made up the story. Wuertz specifically termed these statements by D.R. a "recantation." In addition, Westerville Police Department Detective Charles King testified that Wuertz told him that D.R. had recanted her allegations. Therefore, the same evidence appellant sought to present to the jury, as indicated by the proffer to the court during the trial, was presented via other means. It is well-established that any error committed during a trial by excluding evidence is harmless error where same evidence was admitted through other means. See Johnson v. CassensTransport Co., 158 Ohio App.3d 193, 2004-Ohio-4011, at ¶ 23; State v.Bolling, Montgomery App. No. 20225, 2005-Ohio-2509, at ¶ 19 (because the same evidence defendant sought to introduce was admitted via other means, the trial court's error in excluding that testimony was harmless error).
 {¶ 11} By seeking the testimony of Setterlin, and seeking to admit the report regarding the interview with D.R., appellant was attempting to prove to the jury that D.R.'s allegations had been false because D.R. had previously recanted the allegations. When a defendant seeks to introduce evidence but is precluded by the trial court from doing so, and there exists other admitted evidence that permits the defendant to ask the jury to draw the same conclusions as the excluded evidence, the trial court's improper exclusion of such evidence is harmless error. See id., at ¶ 19. Thus, in the present case, even if the trial court erred by denying appellant's request to call Setterlin as a witness and to admit her January 22, 2003 report, the same evidence was presented to the jury through other means, and any error in the exclusion of the evidence was harmless error. Therefore, appellant's first assignment of error is overruled.
 {¶ 12} Appellant asserts in his second assignment of error that the trial court's judgment was not supported by sufficient evidence and was against the manifest weight of the evidence. When reviewing the sufficiency of the evidence, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781.
 {¶ 13} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983), 20 Ohio App.3d 172, 175. If we find that the factfinder clearly lost its way, we must reverse the conviction and order a new trial. Id. On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt.State v. Getsy (1998), 84 Ohio St.3d 180, 193-194; State v. Eley (1978),56 Ohio St.2d 169, syllabus. In conducting our review, we are guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 14} R.C. 2907.05 provides, in pertinent part:
 (A) No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies:
 * * *
 (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
"'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 15} Initially, we note that appellant's argument under this assignment of error is actually only a manifest weight of the evidence argument. Appellant's argument centers largely upon the credibility of the testimony of the victim, D.R. However, as explained above, when reviewing the sufficiency of the evidence, we must construe the evidence in favor of the state. The appellate court is testing the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66,68-69. We essentially assume the state's witnesses testified truthfully and determine if that testimony satisfies each element of the crime.State v. Woodward, Franklin App. No. 03AP-398, 2004-Ohio-4418, at ¶ 16.
 {¶ 16} In the present case, construing the testimony of D.R. in a light most favorable to the state, it is clear that D.R.'s testimony presented sufficient evidence beyond a reasonable doubt. This court has reiterated that the victim's testimony alone is sufficient to support the conviction for sexual assault. See In re Fisher (June 25, 1998), Franklin App. No. 97APF10-1356. There is nothing in the law that requires that a sexual assault victim's testimony be corroborated as a condition precedent to conviction. State v. Nichols (1993),85 Ohio App.3d 65, 76. D.R., who was eight years old at the time of her testimony in the present case, testified that appellant took her into the bathroom, pulled down her pants, shaved her legs, and put his fingers in her "pee-pee." She stated that when he touched her "pee-pee," it "hurt kind of." She later testified in greater detail, stating that she was asleep in her bedroom, appellant came in, and took her into the bathroom. Appellant told her to take off her underwear, so she sat on the floor and took them off. Appellant then shaved her legs and touched her "pee-pee." Further, there was testimony from D.R.'s father corroborating D.R.'s allegations. Father testified that, on January 1, 2003, he noticed that his daughter's legs were shaved. On January 16, 2003, after father had custody of D.R. again, D.R. told him that her "pee-pee" hurt because appellant touched it. D.R. indicated the area, and it was her vaginal area.
 {¶ 17} If believed by a jury, the above evidence was sufficient to find appellant guilty of gross sexual imposition beyond a reasonable doubt. D.R. and father both testified regarding "sexual contact." She testified to the touching of her genitals and father testified as to what D.R. had told him and that he had seen her shaved legs. Further proof of sexual gratification generally must be accomplished by inference rather than by direct evidence. See State v. Cobb (1991),81 Ohio App.3d 179, 185. In the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer a purpose of sexual arousal or gratification from the "type, nature and circumstances of the contact, along with the personality of the defendant." Id. Here, construing the evidence most strongly in favor of the state, the jury could conclude that appellant's insertion of his finger into D.R.'s vagina was for the purpose of sexual arousal, given the circumstances surrounding the incident, including the privacy in which it occurred. Also, in State v. Astley (1987), 36 Ohio App.3d 247,250, we held that gross sexual imposition involving a victim under the age of 13 is a strict liability offense in Ohio and requires no precise culpable state of mind. All that is required is a showing of the proscribed sexual contact. Id. For these reasons, we find the jury's verdict was based upon sufficient evidence.
 {¶ 18} With regard to the manifest weight of the evidence, appellant first argues that there was no physical evidence of sexual contact discovered during D.R.'s medical examinations. However, physical evidence of sexual contact, as defined above, is not a required element of gross sexual imposition, and D.R.'s testimony was sufficient to provide evidence of the sexual contact. See State v. Owens (Jan. 24, 2001), Summit App. No. 19932 (the mere absence of corroborating physical evidence does not negate the testimony of a witness to a crime). Further, D.R. did not specify the extent of the penetration by appellant's finger. Thus, the penetration D.R. claimed may have been only slight and insufficient to leave any observable traces of the intrusion. As R.C. 2907.01(B) requires only "touching," the lack of any physical evidence is not critical to a finding of guilt. Importantly, Gail Hornor, a nurse practitioner at the hospital where D.R. was examined, testified that less than five percent of children have any physical findings of sexual abuse, including girls who have been penetrated by a penis. She also stated that tears in the vaginal area heal very quickly. See, also, State v. Muhleka, Montgomery App. No. CIV.A. 19827, 2004-Ohio-1822, at ¶ 51 (the fact that there is no physical evidence to prove defendant had sexual contact with the victim is not determinative, as a doctor testified that, in the majority of child sexual abuse cases, there is no physical finding evidencing the abuse). Dr. Matthew White, who examined D.R., likewise testified that, in approximately 80 percent of sexual abuse cases, physical examination will reveal no physical evidence of the abuse. Dr. White also stated that the hymen in prepubescent girls is particularly elastic, and any injury to D.R. could have healed during the weeks between the incident and his examination. Therefore, we fail to find the lack of physical evidence is a significant factor in weighing the evidence.
 {¶ 19} Appellant also makes several arguments pertaining to D.R.'s credibility. Appellant first contends that D.R. made inconsistent statements, given that she recanted the allegations in her interview with Setterlin. However, as the state points out, the jury may have found D.R.'s recantation dubious. Sergeant Wuertz testified the recantation occurred after D.R. had been returned to mother's custody for several days. Wuertz also stated the interview was conducted at mother's house and that appellant was in the house during the interview. D.R. testified her mother did not believe her allegation. Further, father testified that appellant had just days before yelled at D.R. for making up the story, making her cry. Thus, the jury may have found the recantation had been coerced, either intentionally or unintentionally, as a result of D.R.'s close proximity to appellant, who had yelled at her, and her mother, who had said she did not believe her. Also, Wuertz testified that it is not unusual for a child to recant a statement of sexual abuse when the perpetrator is a loved one. Wuertz also stated that children sometimes recant when adults who are not supportive of the allegations have access to the child during the investigation. Regardless, the jury was not present during the Setterlin interview to weigh her credibility at that time, but it was able to personally view D.R. during her trial testimony, in which she steadfastly maintained that appellant had touched and penetrated her vagina with his finger and shaved her legs. Having the opportunity to view D.R. during trial, it apparently found her testimony credible and her prior recantation not reliable, and this court has no reason to disturb the jury's credibility determination in this respect.
 {¶ 20} Appellant also points out that D.R. told Lisa Smith, another FCCS caseworker, inconsistent statements within the same interview on January 18, 2003, when she stated that appellant pulled down her pants, fondled her, and touched her "pee-pee," but then later stated that appellant touched her "pee-pee" "over top of [her] clothing." It is true that these statements are inconsistent. However, Smith indicated that D.R. seemed shy and embarrassed to be talking to her, which may have affected D.R.'s discussion of the activities. See State v. Boyd (Oct. 31, 1997), Champaign App. No. 97 CA 1 (an imprecision or inconsistency in a young witness' testimony could likely stem from fear rather than a lack of credibility). Debbie Fournier, a hospital social worker who interviewed D.R., testified that it is not unusual for a child of D.R.'s age to be somewhat inconsistent with various disclosures each time she is interviewed. Regardless, as explained above, the jury viewed D.R.'s in-court testimony and apparently found it credible. Even if D.R.'s testimony was contradictory, the jury was free to believe all, some, or none of her testimony. See State v. Jackson (1993), 86 Ohio App.3d 29,33. Again, we have no reason to disturb the jury's determination in this regard. See State v. Mullen (Aug. 12, 1994), Meigs App. No. 93 CA 518 (any inconsistency in a child's testimony is a matter of credibility for determination by the trier of fact). We would also note that the definition of "sexual contact" has been interpreted by several courts to include any physical touching, even through clothing, of the body of another. See, e.g., State v. Jones, Cuyahoga App. No. 87411,2006-Ohio-5249, at ¶ 15, citing State v. Ackley, 120 Ohio Misc.2d 60,2002-Ohio-6002; State v. Goins (Dec. 3, 2001), Butler App. No. CA2000-09-190. Thus, under either scenario described by D.R., the definition of "sexual contact" would have been satisfied pursuant to the interpretation in these cases.
 {¶ 21} Appellant also argues that D.R.'s trial testimony was not credible because it was nearly two and one-half years after the incident, and she could not remember many major events around the same period, such as doctor's examinations, interviews with FCCS, or her recantation to Setterlin and Sergeant Wuertz. Although it is true that D.R. could not remember several events, D.R. was able to recall many other fine details of other events that occurred around the time of the abuse. She stated she told her mother about the incident, and her mother went back to sleep. She also remembered there was no snow on the ground when it happened, and it was cold. She also stated she thought she remembered Dr. White, and stated she remembered testifying a year earlier in the courtroom. D.R. also testified that she remembered she had peanut butter on toast and watched television after the incident. D.R. was also able to remember she had toys at her mother's house and that there had been a recent changeover of custody between her mother and father around the time of the incident. Thus, we find appellant's argument, in this respect, does not strongly weigh in his favor.
 {¶ 22} In addition, appellant contends there was evidence that there was a conflict between D.R.'s parents as a result of a recent divorce to suggest that the accusation was fabricated, including evidence that father's current wife cut up photographs and mailed the pieces to mother, and father followed mother as she went on romantic dates. However, despite evidence that there was some conflict as a result of the divorce, there is no evidence to suggest that this conflict had any connection with D.R.'s allegations of sexual abuse. In fact, D.R. specifically testified that she had never witnessed her stepmother and mother argue or her father and mother argue. Thus, we find this evidence unpersuasive.
 {¶ 23} Therefore, viewing all the reasonable inferences that arise from the evidence and having no reason to disturb the weight given to this evidence by the jury, we cannot find the jury clearly lost its way and created a manifest miscarriage of justice. As with many cases involving sexual assault, the only direct evidence in this case came from the victim. D.R. reported consistent versions of the incident to at least four people around the time of the occurrence. D.R.'s version of the facts was also not inconsistent with the opportunity for appellant to have committed the act or with any surrounding circumstances, such as the layout of mother's home, the time the incident occurred, or the period in which the incident allegedly occurred. With no compelling reason to question D.R.'s trial testimony, we can only conclude that her testimony was truthful. Thus, the jury's verdict finding appellant guilty of gross sexual imposition was not against the manifest weight of the evidence. For these reasons, appellant's second assignment of error is overruled.
 {¶ 24} Accordingly, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.