[Cite as *Tanglewood Shopping Ctr., L.L.C. v. Riser Foods Co.*, 2018-Ohio-1183.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 105364

# TANGLEWOOD SHOPPING CENTER, L.L.C.

### PLAINTIFF-APPELLANT

vs.

# RISER FOODS COMPANY

### DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-808457

**BEFORE:** McCormack, P.J., E.T. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** March 29, 2018

**ATTORNEY FOR APPELLANT**

Paul M. Greenberger
Berns, Ockner & Greenberger, L.L.C.
3733 Park East Drive, Suite 200
Beachwood, OH 44122


**ATTORNEYS FOR APPELLEE**

David J. Tocco
Vorys, Sater, Seymour & Pease, L.L.P.
200 Public Square, Suite 1400
Cleveland, OH 44114

James S. Larrimer
301 Grant Street
One Oxford Centre, 35th Floor
Pittsburgh, PA 15219

TIM McCORMACK, P.J.:

{¶1}   Plaintiff-appellant Tanglewood Square Delaware, L.L.C., appeals from the decision of the trial court granting summary judgment for defendant-appellee Riser Foods Company.   For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶2} Plaintiff-appellant Tanglewood Square Delaware, L.L.C. is the successor-in-interest of plaintiff-appellant Tanglewood Square Shopping Center, L.L.C. ("Tanglewood") as the owner and landlord of the shopping center at which defendant-appellee Riser Foods Company ("Riser") is a tenant.   Riser operates a Giant Eagle supermarket at Tanglewood's Geauga County, Ohio shopping center.

{¶3}   In 1996, Riser's predecessor-in-interest and Tanglewood entered into a 20-year commercial lease (the "lease") under which Riser's predecessor-in-interest rented a "certain store building" of "approximately 63,733 square feet" to operate a supermarket.

{¶4} Under the lease, Riser was obligated to pay rent in two components. Pursuant to section 3.1 of the lease, a "base rent" was calculated by multiplying a dollar amount by square foot, with the cost per square foot increasing periodically as follows:

| Lease Years | Annual Base Rent | Cost Per Sq. Feet | Monthly Base Rent |
|---|---|---|---|
| Year 1 | $446.131 | $7.00 | $37,177.58 |
| Year 2 | $509,864 | $8.00 | $42,488.67 |
| Years 3-5 | $557,664 | $8.75 | $46,471.98 |
| Years 6-10 | $578,696 | $9.08 | $48,224.64 |
| Years 11-15 | $636,055 | $9.98 | $53,004.61 |
| Years 16-20 | $699,788 | $10.98 | $58,315.70 |
| Years 21-25 | $769,895 | $12.08 | $64,157.89 |
| Years 26-30 | $847,012 | $13.29 | $70,584.30 |
| Years 31-35 | $931,776 | $14.62 | $77,648.04 |

These figures reflect a total square footage of 63,733, in accordance with the description of the premises in section 1.1 of the lease.

{¶5} Pursuant to section 3.2 of the lease, Riser was also obligated to pay "percentage rent," which was determined based on a percentage of gross sales in excess of a determined annual break point. Additionally, section 4.1 of the lease required Riser to make additional payments based on its proportional share of real estate taxes and assessments, calculated using Riser's "square foot area."

{¶6} The original lease was amended by a November 20, 2008 Amendment to Lease (the "amendment"). The dispute in this case revolves around Riser's expansion of their store pursuant to this amendment.

{¶7} In its third recital, the amendment stated:

WHEREAS, the Original Premises is 66,297 square feet and Tenant desires to expand the Original Premises to include an additional 12,351 square feet, totaling 78,648 square feet within the area defined herein and noted as the "Expansion Area" on the site plan attached hereto as Exhibit A.

We note, as the trial court did, that the square footage of the original premises stated in the amendment is 2,564 feet larger than the figure that was used to calculate the base rent under the original lease, with no explanation for the discrepancy.

{¶8} In addition to providing for Riser's expansion, the amendment also had the effect of amending and fully restating sections 3.1 and 3.2 of the lease.   Under the terms of the amendment, the base rent increased as follows:

|  | Years | Monthly Base Rent | Annual Base Rent |
|---|---|---|---|
| Original Term (as modified) | From the Expansion Delivery Date through the 5th Lease Year | $77,009.50 | $924,114.00 |
|  | 6th - 10th Lease Year | $83,563.50 | $1,002,762.00 |
|  | 11th - 15th Lease Year | $90,117.50 | $1,081,410.00 |
|  | 16th - 20th Lease Year | $96,671.50 | $1,160,058.00 |

Nothing in the amendment indicates that the base rent was calculated based on square footage, as it had been in the original lease.

{¶9}   While the amendment's third recital stated the expansion area would be 12,351 square feet, the amendment contemplated an addition beyond that square footage. Section 4(b) required Riser to "prepare and submit to Landlord a set of interior layout

plans and exterior elevations and specifications for Tenant's Expansion Work which Landlord shall review and approve within fifteen (15) days after its receipt of the same." Section 4(b) went on to describe "Landlord Consent Items," giving Tanglewood the sole and exclusive right to either reject or accept Riser's plans for the proposed expansion if, among other reasons, Riser submitted plans that would "result in building improvements beyond the boundary of the Expansion Area shown on the Site Plan." The amendment further noted that "if Landlord shall fail to give written notice to Tenant as to whether it approves of or objects to the plans within said fifteen (15) day period * * * then Landlord shall be deemed to have approved the plans as submitted." The plans and specifications approved or deemed approved were defined in the amendment as the "final plans."

{¶10} Pursuant to the amendment, Riser submitted plans and specifications for the expansion to Tanglewood for its approval on September 25, 2009. These plans included specifications for the vestibule at issue in this case. On October 20, 2009, after the 15-day window had closed, Tanglewood notified Riser by email that the "plans and specs are acceptable."

{¶11} Upon receiving Tanglewood's approval in accordance with the amendment, Riser began construction on the expansion. Ultimately, the expansion work was 1,349 square feet larger than the expansion area described in the amendment's third recital.

{¶12} Tanglewood concedes that it effectively approved Riser's plans showing construction beyond the expansion area, but it contends that it never agreed that Riser could occupy this area "for free." Similarly, Tanglewood argues that the vestibule,

referred to by Tanglewood as the "Over-Expansion," is not governed by the amendment. Therefore, according to Tanglewood, Riser became a tenant at will with respect to the vestibule upon completion of construction.

{¶13} Tanglewood, seeking compensation from Riser for Riser's use and occupancy of the vestibule, initiated the underlying action against Riser on December 20, 2013. In its second amended complaint, filed on February 27, 2014, Tanglewood asserted claims for breach of contract, declaratory judgment, reformation of contract, unjust enrichment, and trespass. Tanglewood's claims for breach, declaratory judgment, and reformation were premised on the idea that Riser's addition was constructed partially outside of the expansion area as defined in the amendment. Such an "over-expansion," according to Tanglewood, violated the express terms of the amendment. Tanglewood's unjust enrichment and trespass claims were likewise premised on the idea that because the vestibule was approximately 1,349 square feet larger than the expansion area, that "over-expansion" was not governed by the original lease or amendment.

{¶14} On June 10, 2014, Tanglewood filed a motion for partial summary judgment, on its declaratory judgment claim, to the effect that Riser's occupancy of the additional square footage is as a tenant at will because the extra square footage is not covered by the contract and that Riser is liable to Tanglewood for the reasonable value of the extra square footage.

{¶15} On June 20, 2014, Riser filed a motion for summary judgment on the basis that the lease clearly contemplates a fixed amount of base rent for the entire expansion,

including the vestibule, because Tanglewood consented to the expansion without a demand for additional base rent.

{¶16} On December 15, 2015, the trial court granted Riser's motion for summary judgment and denied Tanglewood's motion for partial summary judgment.

{¶17} Tanglewood appealed the trial court's dismissal of its unjust enrichment and trespass claims, presenting two assignments of error for our review.

**Law and Analysis**

{¶18} In its first assignment of error, Tanglewood argues that the trial court erred in granting summary judgment for Riser because the court erroneously held that "the entire building as it exists after the expansion was built is the 'premises' which is governed by the lease and the amendment." Specifically, Tanglewood argues that the trial court erred when it determined that the 1,349 square feet constituting the vestibule could be governed by the amendment, even though the amendment changed the definition of the "premises" to exactly 78,648 square feet.

{¶19} In its second assignment of error, Tanglewood argues that the trial court erred when it denied Tanglewood recovery under theories of unjust enrichment and trespass.

{¶20} In granting Riser's motion for summary judgment, the trial court held that the amendment changed the description of the leased property to mean "the 'original premises' plus the 'expansion area,' and both of these areas are not defined in terms of an exact number of square feet." Therefore, according to the trial court, the vestibule at

issue was within the amendment's "expansion area" and thus governed by the amendment.

**{¶21}** A trial court's decision to grant summary judgment is reviewed de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). This court conducts an independent review of the record to determine whether summary judgment is appropriate. Summary judgment is appropriate when "(1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only reach one conclusion which is adverse to the nonmoving party." *Hull v. Sawchyn*, 145 Ohio App.3d 193, 196, 762 N.E.2d 416 (8th Dist.2001).

**{¶22}** Tanglewood's argument in its first assignment of error consists of a lengthy discussion of the meaning of the terms "premises," "expansion area," and "tenant's expansion work" under the amendment. After a thorough review of the record, we disagree with Tanglewood that the premises governed by the amendment was limited to precisely 12,351 square feet. Although the third recital described the enlarged premises as 78,648 square feet, the amendment went on to provide for the possibility that Tanglewood could approve final plans for construction beyond that area, and Tanglewood did in fact approve such plans.

**{¶23}** Further, the parties agreed in the original lease that the lease, as amended, constitutes the entire agreement concerning the premises and shopping center. Section 23.7 of the lease expressly states that "there are no covenants, promises, agreements,

conditions, or understandings either oral or written" between the parties other than those provided for in the lease as amended. Therefore, the obligations imposed upon Riser by the amended lease are the extent of such obligations to Tanglewood.

{¶24} Even if this court were to agree with Tanglewood's interpretation of the aforementioned defined terms, Tanglewood's argument fails to explain why this court should ignore the fact that Tanglewood consented to the very expansion it now attempts to challenge in this litigation. At no point has Tanglewood suggested why this court should overlook the fact that it consented to Riser's plans in accordance with the amendment, under which Riser was obligated to pay a fixed base rent.

{¶25} Tanglewood argues that nothing can be inferred from the amendment's explicit inclusion of its right to object to construction plans beyond the expansion area. What is missing from this argument, and what this court views as critical to our analysis of this case, is any legally persuasive reason for us to ignore the undisputed fact that Tanglewood approved Riser's plans. A dispute regarding the origin of Tanglewood's right to object to nonconforming plans becomes irrelevant where, as here, the right was not exercised. The relevant inquiry is the effect of Tanglewood's approval of Riser's plans.

{¶26} Tanglewood argues that its approval of Riser's plans is "ineffective to enlarge the Premises thereby" because there was no separate written and acknowledged conveyance of the over-expansion. We are not persuaded by this argument.

{¶27} We agree with the trial court that the effect of Tanglewood's approval of the final plans resulted in an increase to the total square footage of the premises governed by the amendment. As discussed above, section 4(b) of the amendment contemplated a situation in which Riser would submit plans resulting in construction beyond the 12,351 square foot expansion area and Tanglewood subsequently approved those plans. By virtue of this approval, the plans became the final plans under the amendment.

{¶28} The amendment did not include any provision for either amending the property description of the expansion area or increasing the base rent owed to Tanglewood in the event that Tanglewood consented to expansion beyond 12,351 square feet. Further, the amendment, unlike the original lease, did not include any indication that the base rent was to be calculated according to square footage.

{¶29} Contrary to Tanglewood's assertion, the effect of our interpretation of the amendment is not to confer a benefit — in the form of 1,349 square feet — upon Riser "for free." Rather, we conclude that both parties received the benefit of their bargain. Specifically, Riser received the entire post-construction expansion area in exchange for the base rent and percentage rent described in section 3 of the amendment.

{¶30} In light of the existence of a fully integrated agreement between the parties, together with the amendment's contemplation of construction beyond the expansion area, Tanglewood's approval of such construction, and the absence of any provision or indication that such an over-expansion would result in additional obligations for Riser, we find Tanglewood's first assignment of error to be without merit.

**{¶31}** In light of the above, the trial court did not err in denying Tanglewood recovery under theories of unjust enrichment and trespass. Therefore, Tanglewood's second assignment of error is also without merit.

**{¶32}** "Unjust enrichment occurs when a person 'has and retains money or benefits which in justice and equity belong to another.'" *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20, quoting *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938). In Ohio, a party asserting an unjust enrichment claim must establish: "'(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.'" *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984), quoting *Hummel*.

**{¶33}** "This court has repeatedly held that when 'there is a valid, enforceable contract * * * the doctrine of unjust enrichment is not applicable.'" *Benefit Options Agency, Inc. v. Med. Mut.*, 8th Dist. Cuyahoga No. 94245, 2010-Ohio-4495, ¶ 24, quoting *F&L Ctr. Co. v. H. Goodman, Inc.*, 8th Dist. Cuyahoga No. 83503, 2004-Ohio-5856, ¶ 16. Unjust enrichment is an equitable remedy and, therefore, is unavailable where parties have entered into an express contract concerning the same subject matter, absent fraud or illegality. *Bickham v. Standley*, 183 Ohio App.3d 422, 428, 917 N.E.2d 330 (3d Dist.2009). More to the point, "the theory of unjust enrichment cannot be used to

reform [a] contract." *Willoughby v. Willoughby*, 11th Dist. Trumbull No. 2012-T-0095, 2014-Ohio-743, ¶ 29.

{¶34} The lease, as amended, governed the parties' respective obligations relating to the premises and the shopping center. The amendment, in particular, was concerned with Riser's expansion. In pursuing an unjust enrichment claim, Tanglewood is asking this court to ignore the fact that the parties negotiated the terms of the amendment, and Riser has tendered payment to Tanglewood as it was required to do under the amendment. The fact that Tanglewood had an unexpressed intention to charge Riser base rent based on the square footage of the expansion is insufficient to succeed on an unjust enrichment claim.

{¶35} Similarly, Riser is not liable to Tanglewood for trespass. Tanglewood cites a case for the proposition that where a tenant holds over after the landlord has fixed an increased rent, the tenant can be held liable for damages for trespass. *Lane v. Greene*, 21 Ohio App. 62, 68, 152 N.E. 790 (4th Dist.1926). This case is not analogous. The parties agreed to an increased base rent for Riser's expansion, memorialized in the amendment, and Riser has not violated the terms of this amendment.

{¶36} To the extent that Tanglewood was attempting to pursue a claim for the common law tort of trespass upon real property, this claim necessarily fails. Such a claim "occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * *." *Apel v. Katz*, 83 Ohio St.3d 11, 19, 697 N.E.2d 600 (1998), citing *Linley v. DeMoss*, 83

Ohio App.3d 594, 598, 615 N.E.2d 631 (10th Dist.1992). As discussed above, Tanglewood expressly consented to Riser's construction of the vestibule. In light of this consent, it is unclear how Tanglewood could maintain an action that requires a finding that Riser was acting without authority or privilege.

{¶37} For these reasons, we affirm the decision of the trial court granting summary judgment to Riser.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
PATRICIA ANN BLACKMON, J., CONCUR