EILEEN A. GALLAGHER, A.J.:
{¶ 1} Defendant-appellant Arvella Mills appeals from the decision of the Cleveland Municipal Court granting summary judgment in favor of plaintiff-appellee Cleveland Central Catholic High School ("Cleveland Central Catholic" or the "school") on its claims for the provision of necessaries under R.C. 3103.03(D) and unjust enrichment based on Mills' alleged failure to pay the balance due for her daughter's tuition at Cleveland Central Catholic.
{¶ 2} For the reasons that follow, we reverse the trial court's grant of summary judgment in favor of Cleveland Central Catholic on its necessaries claim and enter judgment in favor of Mills on that claim. Finding that genuine issues of material fact exist as to whether Mills was unjustly enriched and, if so, the extent to which she was unjustly enriched, we reverse the trial court's grant of summary judgment in favor of Cleveland Central Catholic on its unjust enrichment claim and remand the case for further proceedings on that claim.
Factual Background and Procedural History
{¶ 3} Mills is the mother of Kayla Anderson. In August 2013, Mills enrolled *332 Anderson at Cleveland Central Catholic for the 2013-2014 school year, Anderson's freshman year of high school. In connection with Anderson's enrollment at Cleveland Central Catholic, Mills paid a $150 registration fee and executed a registration deposit form for the 2013-2014 school year (the "registration deposit form") that stated: "I acknowledge that I am financially responsible for all costs incurred while my student is enrolled at Cleveland Central Catholic High School."
{¶ 4} In August 2013, Mills executed an "Educational Contract (Newly Enrolled Student)" (the "educational contract"), which provided, in relevant part:
Tuition for the 2013-2014 school year is $7,590 plus a non-refundable registration fee. I (We) acknowledge that my (our) financial obligation for the tuition of my (our) son/daughter during the 2013-2014 school year at Cleveland Central Catholic High School is payable as designated in the Parent-Student Handbook .
With respect to a parent's "financial obligations," the school's 2013-2014 parent-student handbook states, in relevant part:
In order for the school to be a good financial steward, tuition and fees must be paid on time. All payments will be made directly to Cleveland Central Catholic High School. Tuition payments are due by the 10th of each month, as stated in your Tuition Loan Contract. * * *
Holdout Policy
A student whose tuition account is in arrears will be excluded from the following: class attendance, participation in all sporting activities, participation in school sponsored events until the account becomes current or payment arrangements are made. An account is considered in arrears if a parent/guardian is negligent in fulfilling their tuition obligation as stated in their Tuition Loan Contract by more than one month from their last payment due date. Parent/guardians will be informed in advance when their account becomes delinquent.
Financial Awards
All assistance given from the school, Diocese of Cleveland, Cleveland Scholarship and Tutoring Program, and other outside sources is based on the student's attendance for a full year. The school reserves the right to adjust or rescind completely any and all financial aid at any time. Grants and scholarships are non-refundable and non-transferable. Financial awards are based on need, academics, student behavior, and school involvement. Should your student withdraw or be dismissed during the school year, your financial assistance will be prorated. * * *
Cleveland Central Catholic Student/Parent Work Program
The Cleveland Central Catholic Student/Parent Work Program is available for students and their parents/guardians as a way to earn credit toward their tuition. Earned tuition credit is awarded on a monthly basis. Credits are non-refundable and non-transferable.
* * *
Student Re-Enrollment
Tuition accounts must be paid in full at the end of the school year for a student to be considered eligible to continue attendance at Cleveland Central Catholic High School.[1]
*333 There is no "tuition loan contract" for Anderson's tuition in the record.
{¶ 5} Mills testified that at the time she decided to enroll Anderson at Cleveland Central Catholic, she believed her daughter would attend the school, because she had attended private schools in the past, on a "tuition voucher" from the Cleveland Scholarship and Tutoring Program (the "Cleveland Scholarship Program"). The Cleveland Scholarship Program is a program administered by the Ohio Department of Education, through which the state awards scholarships or "vouchers" to parents of low income students (who would otherwise attend a public school in the Cleveland Metropolitan School District) towards the cost of tuition to attend a private school.
{¶ 6} Mills testified that when Anderson was finishing her eighth grade year at St. Stanislaus, she began looking at private high schools. Mills stated that she wanted her daughter to attend a private high school rather than a public high school because "[s]he did pretty well in school" and Mills "thought it was more of a challenge for her." Mills testified that she could not have afforded the tuition at Cleveland Central Catholic without a voucher and would not have enrolled her daughter at the school had she known that she did not have a voucher that covered Anderson's tuition.
{¶ 7} According to Mills, no one at Cleveland Central Catholic spoke to her about paying Anderson's tuition before she enrolled Anderson at the school. She, therefore, believed the school had all of the information it needed to ensure that Anderson's tuition voucher would carry over from her eighth grade year at St. Stanislaus to her freshman year at Cleveland Central Catholic. Mills testified that she first learned that there was a problem with her voucher "at some point well into [Anderson's] freshman year" when one of the school's secretaries contacted Mills regarding Anderson's unpaid tuition.
{¶ 8} Richard Goodrich, the director of finance and facilities for Cleveland Central Catholic,[2] testified that "roughly 85 percent" of students attend the school on a voucher from the Cleveland Scholarship Program and that parents have to file an application to renew their vouchers every year.
{¶ 9} Goodrich stated that because Anderson had a voucher as an eighth grade student, Mills needed to renew the voucher for the 2013-2014 school year for it to apply to Anderson's freshman year at Cleveland Central Catholic. The deadline for requesting a voucher renewal for the 2013-2014 school year was in April 2013 - several months before Anderson applied to Cleveland Central Catholic. To renew her voucher, Mills needed to give her completed renewal application to a school (the school Anderson was then attending, Cleveland Central Catholic or another school that was willing to process the paperwork for her) that could submit the paperwork to the state on her behalf. Goodrich stated that because Mills did not timely submit the paperwork to renew her voucher for the 2013-2014 school year, she "lost" it.
{¶ 10} Goodrich could not state whether anyone at the school spoke with Mills about the status of her voucher prior to Anderson's enrollment; he could only say that all new students are given information regarding what needs to be done to obtain *334 a voucher and that "[w]hether they follow through on that is up to them." He stated that if a parent forgets to turn in the necessary paperwork prior to the voucher deadline, the parent "will be chased down, plain and simple," but that if a parent comes in after the state's voucher deadline, there is nothing the school can do. Goodrich stated that "[t]he fact that [Mills] registered late caused her to miss the deadline."
{¶ 11} With respect to what the school told Mills about the payment of tuition for Anderson's freshman year, given that she had missed the voucher deadline, Goodrich testified:
Q. [A]s the rep for Cleveland Central Catholic High School, * * * you don't know whether anyone ever disclosed to Arvella Mills the fact that the deadline had passed and that she would owe full tuition to Cleveland Central Catholic; is that right?
A. No, she was informed of what the tuition was. She was also informed what the value of the voucher was. And so she was informed of that verbally. And she was also given a handbook that states that she is responsible for tuition. She is responsible for all of the tuition, whether she has a voucher or not. A voucher is just a means to help pay the tuition. She is still responsible because the voucher is given to her, it is not given to the school. So yes, she was told she would be responsible for the tuition.
Q. * * * You don't know whether anyone disclosed to Arvella these two facts: One, that the deadline had passed and as a consequence of that * * * she would owe full tuition?
A. She was given a handbook which states that she is responsible for tuition. So, yes, she was informed that she was responsible for tuition.
Q. Does the handbook say that the deadline for the scholarship -
A. No, because the deadline changes from year to year based on the State of Ohio. Again, that is not our deadline. That is not our - you know.
Q. I understand you don't set the deadline. What I'm asking, when Cleveland Central Catholic first met Ms. Mills, did they inform her that the deadline for the Cleveland Scholarship and Tutoring program had passed?
A. That I can't answer. I don't know.
{¶ 12} According to Goodrich, the school knew in August 2013 that Mills did not have a voucher for the 2013-2014 school year. Goodrich testified that when a parent does not pay tuition in full, he or she is put on a monthly payment plan. Under the monthly payment plan, "[t]here is no billing per se"; parents are given their monthly payment information at the beginning of the school year and expected to make the monthly payments or earn tuition credits by performing volunteer service hours under the school's work program to pay the tuition. Under the school's work program, parents or students can earn tuition credit at a rate of $10 per hour, up to a maximum of 200 hours ($2,000) per year.
{¶ 13} Although he had no personal knowledge of such a conversation, Goodrich "assumed" that the admissions director or principal discussed the fact that she did not have a voucher with Mills at the time she signed the educational contract and that she would have been told at that time "what she needs to pay on a monthly basis" towards Anderson's tuition.
{¶ 14} Although Mills did not have a tuition voucher for the 2013-2014 school year, she did receive $1,500 in diocesan tuition assistance towards Anderson's tuition. Anderson also performed four hours of volunteer service in 2014, resulting in a $40 credit toward her tuition. At the end of *335 the 2013-2014 school year, the school's records showed that Mills owed $6,200 in tuition for 2013-2014.
{¶ 15} Despite her unpaid tuition balance, Anderson continued to attend Cleveland Central Catholic during the 2014-2015 school year. Her tuition for that year was $7,990, plus a $150 registration fee. Mills timely completed the voucher application for 2014-2015 and Anderson was awarded a $5,700 voucher toward her 2014-2015 tuition from the Cleveland Scholarship Program. Mills also received $300 in diocesan tuition assistance, leaving a balance due of $1,940 ($1,790 tuition plus the $150 registration fee) for the 2014-2015 school year. In October 2014, Mills signed a form accepting the voucher for 2014-2015. In accepting the voucher, she agreed "to abide by the regulations * * * governing the Cleveland Scholarship Program," including that "[t]he scholarship amount shall only be applied toward school tuition," that she may be required to pay other fees and costs as prescribed in school policies" and that she would "be responsible for paying any difference between the scholarship amount and the school's tuition." There is no evidence in the record that Mills executed any registration forms, educational contracts or tuition contracts with Cleveland Central Catholic relating to Anderson's tuition for the 2014-2015 school year.
{¶ 16} In the fall of 2014, the school placed Anderson on a tuition "hold-out." Mills testified that she received a call from the school and was told that she owed approximately $8,000 and needed to start making payments towards Anderson's tuition. In December 2014, Mills made a $40 payment. In 2015, Anderson performed 27 hours of volunteer service, resulting in a $270 credit toward her tuition. At the conclusion of the 2014-2015 school year, Anderson's account showed a balance due of $7,888.19, consisting of $6,200 in unpaid tuition costs for 2013-2014, $1,670 in unpaid tuition/registration costs for 2014-2015 and a lost book fee of $18.19.
{¶ 17} Anderson did not return to Cleveland Central Catholic the following year. She attended Glenville High School, a public school, her junior and senior years and graduated from Glenville High School.
{¶ 18} On September 16, 2016, Cleveland Central Catholic filed suit against Mills in the Cleveland Municipal Court. The school alleged (1) that Mills was responsible for the balance of Anderson's tuition costs for the 2013-2014 and 2014-2015 school years under R.C. 3103.03 and (2) that the school had demanded that Mills pay the amount owed and Mills had refused to do so. A "tuition statement," dated March 30, 2016, was attached to the complaint showing an account balance of $7,888.19. A year later, the school filed an amended complaint, asserting an additional claim for unjust enrichment against Mills.
{¶ 19} Mills filed an answer denying liability for Anderson's tuition under R.C. 3103.03 and denying that she had been unjustly enriched by the school's education of Anderson. Mills asserted waiver, estoppel, unclean hands and the statute of frauds as affirmative defenses to the school's claims.
{¶ 20} In January 2018, the parties filed cross-motions for summary judgment.
{¶ 21} Cleveland Central Catholic argued that it was entitled to summary judgment because (1) education is a "necessary" a parent is obligated to provide for his or her child under R.C. 3103.03, (2) Cleveland Central Catholic had conferred a known benefit upon Mills by educating her daughter for two years and (3) it would be unjust for Mills to retain that *336 benefit without paying for the education her daughter received.[3]
{¶ 22} Mills, in turn, argued that she was entitled to summary judgment because (1) a private school education is not a "necessary" under R.C. 3103.03 and (2) there was no genuine issue of material fact that Mills had not engaged in fraud, misrepresentation or bad faith - conduct Mills claimed was necessary in order for the school to prevail on its unjust enrichment claim.[4]
{¶ 23} The trial court granted the school's motion for summary judgment, denied Mills' motion and entered judgment for the school in the amount of $7,888.19 plus postjudgment interest and costs. The trial court did not explain the reasoning for its decision other than to state that it found no genuine issue of material fact and concluded that Cleveland Central Catholic was entitled to judgment as a matter of law.
{¶ 24} Mills appealed, raising the following two assignments of error for review:
ASSIGNMENT OF ERROR NO. 1:
The trial court erred in granting CCCH's motion for summary judgment.
ASSIGNMENT OF ERROR NO. 2:
The trial court erred in denying Ms. Mills' motion for summary judgment.[5]
Law and Analysis
Standard of Review
{¶ 25} We review summary judgment rulings de novo, applying the same standard as the trial court. Grafton v. Ohio Edison Co. , 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and conduct an independent review of the record to determine whether summary judgment is appropriate.
{¶ 26} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law.
{¶ 27} On a motion for summary judgment, the moving party carries an initial *337 burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. Dresher v. Burt , 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. Id. at 293, 662 N.E.2d 264. Summary judgment is appropriate if the nonmoving party fails to meet this burden. Id.
"Necessaries" Claim Pursuant to R.C. 3103.03(D)
{¶ 28} Mills first argues that the trial court erred in granting Cleveland Central Catholic's motion for summary judgment and denying her own motion for summary judgment on the school's necessaries claim under R.C. 3103.03(D).
{¶ 29} A parent is required to support his or her minor child. R.C. 3103.03(A) ("The biological or adoptive parent of a minor child must support the parent's minor children out of the parent's property or by the parent's labor."). Where a third party provides "necessaries" for the support of an unemancipated minor, the third party may recover the reasonable value of those necessaries from the parent in accordance with R.C. 3103.03(D). That provision states:
If a parent neglects to support the parent's minor child in accordance with this section and if the minor child in question is unemancipated, any other person, in good faith, may supply the minor child with necessaries for the support of the minor child and recover the reasonable value of the necessaries supplied from the parent who neglected to support the minor child.
{¶ 30} Thus, a party who seeks to hold the parent of an unemancipated minor child liable for services rendered to that child under R.C. 3103.03(D) must prove by a preponderance of the evidence that the party provided services to the child in good faith, that the services were necessary for the support of the child, that the parent neglected to provide those necessary services for the child and that the charges for those services were reasonable. See, e.g. , Child & Adolescent Serv. Ctr. v. Hambuechen , 5th Dist. Stark No. CA-9043, 1993 WL 87662, 2 (Mar. 8, 1993) ; see also Aharoni v. Michael , 74 Ohio App.3d 260, 264, 598 N.E.2d 1215 (10th Dist. 1991) ("To establish a claim for necessaries * * * in light of all the attendant circumstances, plaintiff must have unofficiously and in good faith provided necessary and reasonable goods or services with the intent to charge the defendant's credit, and only if the defendant neglected provision of such services and refused to do so."). A third party seeking reimbursement under R.C. 3103.03(D) cannot "rest[ ] its case upon the mere assertion that services were rendered in [a given] amount" to the parent's unemancipated minor child. Hambuechen at 2.
{¶ 31} There is no definition of "necessaries" in the statute. However, food, clothing, shelter, medical care and education are among the "necessaries" a parent is generally considered obligated to provide for the support of his or her child. Basista v. Basista , 8th Dist. Cuyahoga No. 83532, 2004-Ohio-4078, 2004 WL 1752928, ¶ 16 ; see also Shirvani v. Momeni , 10th Dist. Franklin No. 09AP-791, 2010-Ohio-2975, 2010 WL 2601832, ¶ 19. In Kulcsar v. Petrovic , 20 Ohio App.3d 104, 105, 484 N.E.2d 1365 (9th Dist.1984), the Ninth District defined "necessaries" as it related to a father's duty of support to support his minor children as:
*338 "a place of abode, furniture, articles of food and wearing apparel, medicines, medical attention, nursing, means of education, and social protection and opportunity, as comport with the health, comfort, welfare, and normal living of human beings according to present standards of civilization, considering his own means, earning capacity, and station in life."
Id. at 105, 484 N.E.2d 1365, quoting 41 Ohio Jurisprudence 2d, Parent and Child, Section 30, at 341 (1960); see also Wolf v. Friedman , 20 Ohio St.2d 49, 55, 253 N.E.2d 761 (1969) (" 'The term "necessaries" is incapable of exact definition; its meaning is variable, depending upon the circumstances, financial and otherwise, of the parties.' "), quoting Read v. Read , 119 Colo. 278, 285, 202 P.2d 953 (1949) ; Family Med. of Stark Cty. v. Smart , 5th Dist. Stark No. 2016CA00218, 2017-Ohio-5866, 2017 WL 3034497, ¶ 36 ("The term 'necessaries' as used in the statute means food, medicines, clothing, shelter, or personal services as are usually considered reasonably essential for the preservation and enjoyment of life."); Home Helpers/Direct Link v. St. Pierre , 196 Ohio App.3d 480, 2011-Ohio-4909, 964 N.E.2d 41, ¶ 11 (12th Dist.) (same); compare Smith v. Sutter , 90 Ohio App. 320, 322-323, 106 N.E.2d 658 (6th Dist.1951) ("The term [necessaries] does not include extravagancies, luxuries, or expeditions for pleasure and personal enjoyment. A third party supplying luxuries to a wife cannot recover from the husband in the absence of proof of an agreement, express or implied, on the husband's part to pay for same.").
{¶ 32} Whether a particular service qualifies as a "necessary" under R.C. 3103.03(D) may, at times, be a question of fact. See Smith at 323, 106 N.E.2d 658 (6th Dist.) ; see also Aharoni v. Michael , 74 Ohio App.3d 260, 264, 598 N.E.2d 1215 (10th Dist.1991) (observing that "[s]ome courts have attempted to state generally the types of expenses that may qualify as necessaries," but that "it is apparent that in many instances characterization should be made on a case-by-case basis depending upon the individual circumstances involved").
{¶ 33} Citing Murton v. Murton , 8th Dist. Cuyahoga No. 31800 (Nov. 16, 1972), and Rand v. Rand , 8th Dist. Cuyahoga No. 47712, 1984 WL 5112 (June 18, 1984), Mills asserts that "this Court has decided" that where a public school option exists, a private school education cannot be a "necessary" covered by R.C. 3103.03(D). However, Murton and Rand involved the child support obligations of noncustodial parents; they did not involve the issue of whether a third party who provides a private school education to a child can seek reimbursement for the cost of that education as a "necessary" under R.C. 3103.03(D).
{¶ 34} In Murton , the issue was whether the trial court had erred in granting the mother's motion to modify the father's child support obligation to include the cost of private school tuition for the couple's son. This court reversed the trial court's decision, concluding that the mother had not established a sufficient change of circumstances to warrant modification of the father's child support obligation. The court noted that the child had been enrolled at a private school before the divorce decree was entered and was enrolled at the same school when the trial court ruled on the mother's motion to modify child support. Id. at 2. The court also stated that "[t]here is no legal duty imposed on a father, under Ohio law, to compel him to send his child to a private school if the community in which the child lives makes available to him the education to which he is entitled through a public school system." Id. at 2-3.
*339 {¶ 35} In Rand, the issue was whether a father who had agreed to pay for "the cost of a four year undergraduate college education" for his son as part of a divorce decree was required to pay for his son's tuition at a private college. Distinguishing Murton , the court held that because the father specifically agreed to pay for his son's college education and no mention was made in the agreement regarding whether that education was to be at a public or private college, the father was obligated to pay for his son's education at the private college. Id. at 4.
{¶ 36} Mills argues that private school tuition can never be a "necessary" where "a public school option exists." The school argues that once Mills chose to enroll Anderson at Cleveland Central Catholic, she effectively took away the public school option as a means of educating Anderson and was, therefore, responsible for reimbursing Cleveland Central Catholic for the cost of the private school education it provided to Anderson under R.C. 3103.03(D).
{¶ 37} A K-12 education is one of a child's basic needs. We cannot say, as a matter of law, that private school tuition could never qualify as a "necessary" for the support of a child under R.C. 3103.03(D). Depending on the public school options available in a given community and the particular needs and circumstances of a specific child in that community, there are certainly circumstances in which a private school education could constitute a "necessary" for a child's support. Upon our review of the record in this case, however, Cleveland Central Catholic did not meet its burden of presenting evidence of specific facts establishing each of the elements of a necessaries claim, including that (1) the private school education it provided to Anderson was a "necessar[y] for [her] support" under R.C. 3103.03(D) and (2) Mills had neglected to provide educational support for Anderson at the time it provided that education. See Civ.R. 56(C).
{¶ 38} Cleveland Central Catholic presented no evidence that the public school education available to Anderson would not have met her needs. Mills testified that when she enrolled Anderson at Cleveland Central Catholic, she believed that Anderson's tuition costs would be covered by a tuition voucher - not that she would be required to personally pay Anderson's tuition costs. She further testified that if she had known she would not have a voucher to cover Anderson's tuition at Cleveland Central Catholic costs, she would have sent Anderson to public school.
{¶ 39} Accordingly, the trial court erred in entering summary judgment in favor of Cleveland Central Catholic on its necessaries claim under R.C. 3103.03(D) and in denying summary judgment in favor of Mills on that claim. We reverse the trial court's grant of summary judgment in favor of Cleveland Central Catholic on its necessaries claim and enter judgment in favor of Mills on that claim.
Unjust Enrichment Claim
{¶ 40} Mills also claims that the trial court erred in granting summary judgment in favor of Cleveland Central Catholic and denying her motion for summary judgment on the school's unjust enrichment claim.
{¶ 41} "Unjust enrichment occurs when a person 'has and retains money or benefits which in justice and equity belong to another.' " Johnson v. Microsoft Corp. , 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20, quoting Hummel v. Hummel , 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938). The purpose of an unjust enrichment claim is not to compensate the plaintiff for loss or damage suffered by the plaintiff, but to enable the plaintiff to recover the benefit he or she has conferred *340 on the defendant under circumstances in which it would be unjust to allow the defendant to retain it. Johnson at ¶ 21, citing Hughes v. Oberholtzer , 162 Ohio St. 330, 335, 123 N.E.2d 393 (1954).
{¶ 42} To prevail on a claim for unjust enrichment, a plaintiff must prove by a preponderance of the evidence that: (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of such benefit and (3) the defendant retained that benefit under circumstances in which it would be unjust for him or her to retain that benefit. Johnson at ¶ 21 ; Hambleton v. R.G. Barry Corp. , 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).
{¶ 43} As an initial matter, Mills argues that because an express contract exists between the parties that "cover[s] the subject of the very same tuition" - i.e., the educational contract Mills signed in August 2013 - Cleveland Central Catholic is precluded from bringing an unjust enrichment claim to recover the costs of Anderson's tuition. We disagree.
{¶ 44} Under Ohio law, the existence of a valid, enforceable contract covering the subject of a dispute generally precludes a claim for unjust enrichment. See, e.g. , Tanglewood Shopping Ctr., L.L.C. v. Riser Foods Co. , 8th Dist. Cuyahoga No. 105364, 2018-Ohio-1183, 2018 WL 1567658, ¶ 33 ("Unjust enrichment is an equitable remedy and, therefore, is unavailable where parties have entered into an express contract concerning the same subject matter, absent fraud or illegality."); Cleveland v. Sohio Oil Co. , 8th Dist. Cuyahoga No. 78860, 2001 WL 1479233, 6 (Nov. 21, 2001) ("A party seeking a remedy under a contract cannot also seek equitable relief for unjust enrichment, absent evidence of fraud, illegality, or bad faith, since compensation is governed by the contract."). In other words, " 'the theory of unjust enrichment cannot be used to reform [a] contract.' " Tanglewood at ¶ 33, quoting Willoughby v. Willoughby , 11th Dist. Trumbull No. 2012-T-0095, 2014-Ohio-743, 2014 WL 854655, ¶ 29.
{¶ 45} For a contract to be enforceable, there must be a "meeting of the minds" as to the essential terms of the agreement. Kostelnik v. Helper , 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16-17. The essential terms of the agreement must be " 'reasonably certain and clear' " and mutually understood by the parties. Id. , quoting Rulli v. Fan Co. , 79 Ohio St.3d 374, 376, 683 N.E.2d 337 (1997). As the Ohio Supreme Court explained in Rulli :
"A court cannot enforce a contract unless it can determine what it is. * * * [The parties] must have expressed their intentions in a manner that is capable of being understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are."
Rulli , 79 Ohio St.3d at 376, 683 N.E.2d 337, quoting 1 Corbin on Contracts, Section 4.1, at 525 (Rev.Ed.1993). The burden of establishing the existence and terms of an agreement lies with the party who claims it exists. Turoczy Bonding Co. v. Mitchell , 2018-Ohio-3173, 118 N.E.3d 439, ¶ 19 (8th Dist.), citing Nilavar v. Osborn , 127 Ohio App.3d 1, 11, 711 N.E.2d 726 (2d Dist.1998).
{¶ 46} The educational contract Mills signed did not contain the essential terms of any agreement between the parties regarding payment of Anderson's tuition. In that "contract," Mills simply "acknowledge[d]" that her daughter's tuition for the 2013-2014 school year was "payable as designated *341 in the Parent-Student Handbook ." The 2013-2014 parent-student handbook, in turn, stated that tuition payments were to be made "as stated in your Tuition Loan Contract." Because there is no evidence that the parties ever executed a tuition loan contract, there was nothing that set forth the terms of payment of Anderson's tuition, including whether, as the school claims, Mills was obligated to pay the full tuition amount.
{¶ 47} Further, the educational contract Mills signed was, by its terms, limited to the 2013-2014 school year. There is no evidence in the record that the parties had an express contract relating to the payment of Anderson's tuition for the 2014-2015 school year. The only document it appears Mills signed with respect to Anderson's 2014-2015 tuition was the Ohio Department of Education's 2014-2015 Cleveland Scholarship acceptance form. In that document Mills simply agreed "to abide by the regulations below governing the Cleveland Scholarship program," including that she would "be responsible for paying any difference between the scholarship amount and the school's tuition." It did not identify the school, the amount of the voucher, the amount of the tuition Mills would be responsible for paying or any other terms with respect to the payment of Anderson's tuition.
{¶ 48} Based on the record before us, Mills has not presented sufficient evidence to establish the existence of a valid, enforceable contract between Mills and Cleveland Central Catholic regarding the payment of Anderson's tuition for the 2013-2014 and 2014-2015 school years. Accordingly, the trial court did not err in denying her motion for summary judgment on that basis.
{¶ 49} Turning to the elements of the school's unjust enrichment claim, there is no dispute as to the first and second elements, i.e., that Mills knowingly received a benefit conferred upon her by the school. Mills admitted in her answer that she "received a benefit from [her daughter's] attendance at Cleveland Central Catholic." Accordingly, on appeal, we must consider whether any genuine issue of material fact exists as to the third element - i.e., whether Mills was "unjustly" enriched by her receipt of this benefit and, if so, the extent to which she was unjustly enriched.
{¶ 50} A showing of " '[e]nrichment alone' " is insufficient for a plaintiff to prevail on a claim for unjust enrichment. Chestnut v. Progressive Cas. Ins. Co. , 166 Ohio App.3d 299, 2006-Ohio-2080, 850 N.E.2d 751 (8th Dist.), quoting Directory Servs. Group v. Staff Builders Internatl. , 8th Dist. Cuyahoga No. 78611, 2001 WL 792715 (July 12, 2001). To prove a cause of action for unjust enrichment, the plaintiff " 'must go further and show that under the circumstances [the plaintiff] has a superior equity so that, as against [the plaintiff], it would be unconscionable for the defendant to retain the benefit.' " Lotfi-Fard v. First Fed. of Lakewood , 8th Dist. Cuyahoga No. 87207, 2006-Ohio-3727, 2006 WL 2036466, ¶ 52, quoting Cincinnati v. Fox , 71 Ohio App. 233, 239, 49 N.E.2d 69 (1st Dist.1943) ; see also United States Health Practices, Inc. v. Blake , 10th Dist. Franklin No. 00AP-1002, 2001 WL 277291, 3 (Mar. 22, 2001). In determining whether it was unjust to permit a defendant to retain a benefit conferred upon it by the plaintiff (and, if so, the appropriate relief to be awarded as a result of the unjust enrichment), "the sum of the circumstances, as well as the equities involved in the case" must be considered. U.S. Health Practices , 2001 WL 277291, at 3.
{¶ 51} On the record before us, considering the totality of the circumstances and the equities involved in the case, we believe reasonable fact finders could disagree *342 at to whether Mills was unjustly enriched and, if so, the extent to which she was unjustly enriched. Accordingly, the trial court erred in entering summary judgment on Cleveland Central Catholic's unjust enrichment claim.
{¶ 52} In reaching this conclusion, we note that the circumstances and equities surrounding Anderson's tuition for 2013-2014 tuition and her tuition for 2014-2015 differ. With respect to Anderson's tuition for the 2013-2014 school year, Mills testified that she did not expect to be financially responsible for the cost of Anderson's tuition because she believed - albeit incorrectly - that the voucher she had received for Anderson's tuition the prior year would carry over to Cleveland Central Catholic.[6] According to Goodrich, the school knew Mills did not have a voucher in August 2013. However, there is no evidence the school notified Mills of that fact prior to Anderson's enrollment.[7] Mills testified that she first learned that there was a problem with Anderson's tuition voucher "at some point well into [Anderson's] freshman year" when one of the school's secretaries "approached [her] about tuition payments." Although the school's parent-student handbook indicates that monthly tuition payments are to be made in accordance with "your Tuition Loan Contract," there is no evidence that Mills was ever asked to execute a tuition loan contract for Anderson's tuition or was given any other information regarding expected payments towards Anderson's tuition.
{¶ 53} On the other hand, although Mills claimed that she would not have enrolled Anderson at Cleveland Central Catholic had she known that her tuition costs were not covered by a voucher, Mills did not withdraw Anderson from Cleveland Central Catholic once she learned that "at some point well into [Anderson's] freshman year" she did not have a voucher that covered Anderson's tuition at Cleveland Central Catholic. Rather, Anderson finished her freshman year at Cleveland Central Catholic and Mills applied for (and received) a voucher covering part of the tuition costs for Anderson's sophomore year at Cleveland Central Catholic.
{¶ 54} With respect to Anderson's tuition for the 2014-2015 school year, there is evidence that when Mills accepted the Cleveland Scholarship for 2014-2015, she knew the voucher she received would cover only part of Anderson's tuition costs and that she or Anderson would have to either pay the balance due on her tuition ($1,940) or perform volunteer services hours through the school's work program to make up the difference. Although Mills or Anderson could have performed sufficient volunteer service hours to cover the balance due on Anderson's tuition for 2014-2015, Anderson performed only 27 volunteer service hours.
{¶ 55} Given that genuine issues of material fact remain as to whether Mills was unjustly enriched and, if so, the extent to which she was unjustly enriched, the trial court erred in granting summary judgment *343 in favor of Cleveland Central Catholic on its unjust enrichment claim.
{¶ 56} We sustain Mills' first and second assignments of error in part and overrule them in part.
{¶ 57} Judgment reversed; case remanded for further proceedings on Cleveland Central Catholic's unjust enrichment claim.
ANITA LASTER MAYS, J., and LARRY A. JONES, SR., J., CONCUR

At oral argument, Cleveland Central Catholic asserted that the parent-student handbook was not part of the record on appeal. However, the document was an exhibit to the deposition of Richard Goodrich that was filed with the trial court along with the deposition transcript. Goodrich identified the document during his deposition and testified that the school's "policy" regarding its "tuition process" was set forth in the financial obligations section of the handbook, referenced above.

Goodrich was the school's Civ.R. 30(B)(5) designee.

In support of its motion (and in opposition to Mills' motion), the school cited to Mills and Goodrich's deposition testimony and submitted copies of the educational contract, the registration deposit form, the 2014-2015 Cleveland Scholarship form, its March 30, 2016 tuition statement and certain discovery responses. It also submitted an affidavit from Goodrich setting forth the amounts the school claimed it was owed for Anderson's tuition.

In support of her motion (and in opposition to the school's motion), Mills cited to Mills and Goodrich's deposition testimony and submitted a copy of a letter from the school's counsel regarding the school's theory of the case and her own affidavit setting forth her belief that Anderson's tuition voucher would apply to her freshman year at Cleveland Central Catholic.

As a general proposition, the denial of a motion for summary judgment is not a final, appealable order. See, e.g. , State ex rel. Overmeyer v. Walinski , 8 Ohio St.2d 23, 37, 222 N.E.2d 312 (1966). Where, as here, however, a trial court grants a summary judgment motion and denies a competing summary judgment motion in the same journal entry and enters final judgment against the appellant, this court may properly review both the trial court's granting of the appellee's motion for summary judgment and its denial of the appellant's competing motion. See, e.g. , Gardens of Raintree Condo. Assn. v. Raintree Condo. Assn. No. 1 , 8th Dist. Cuyahoga No. 69765, 1996 WL 403349, at 5 (July 18, 1996) ; see also St. Croix, Ltd. v. Damitz , 9th Dist. Summit Nos. 25629 and 25630, 2012-Ohio-1325, 2012 WL 1026650, ¶ 9 ; Waterfield Fin. Corp. v. Gilmer , 10th Dist. Franklin No. 04AP-252, 2005-Ohio-1004, 2005 WL 555666, ¶ 45, fn.1.

There is no evidence in the record as to why Mills believed Anderson's prior tuition voucher would carry over to Cleveland Central Catholic other than her claim that because "no one at the time told her otherwise," she "believed that [the school] had all of the information it required to ensure that [Anderson's] tuition voucher would apply for her freshman year."

Goodrich could only "assume" that, at the time Mills signed the educational contract, the school's admissions director or principal would have informed Mills that she did not have a voucher and "what she need[ed] to pay on a monthly basis." Assumptions are not evidence and cannot be the basis for a summary judgment motion.